# Illinois Official Reports

## Appellate Court

---

*Lake County Grading Co. v. Forever Construction, Inc.*, 2017 IL App (2d) 160359

---

| | |
|---|---|
| Appellate Court Caption | LAKE COUNTY GRADING COMPANY, LLC, Plaintiff-Appellant, v. FOREVER CONSTRUCTION, INC., FIRST MIDWEST BANK, as Successor in Interest to Waukegan Savings Bank, THE CITY OF WAUKEGAN, JORGE TORREZ, UNKNOWN OWNERS, and NONRECORD CLAIMANTS, Defendants (First Midwest Bank, Defendant-Appellee). |
| District & No. | Second District<br>Docket No. 2-16-0359 |
| Filed | May 19, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-CH-885; the Hon. Luis A. Berrones, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Bogdan Martinovich, of Ray & Glick, Ltd., of Libertyville, for appellant.<br><br>William J. Serritella, Jr., Jonathan B. Amarilio, and Jillian S. Cole, of Taft Stettinius & Hollister LLP, of Chicago, for appellee. |

JUSTICE BURKE delivered the judgment of the court, with opinion. Justices Hutchinson and Spence concurred in the judgment and opinion.


**OPINION**

¶ 1        Waukegan Savings Bank (Waukegan Savings) obtained a judgment of foreclosure on the property at 133 S. Genesee Street in Waukegan, which contained a Salvation Army warehouse (property). Waukegan Savings was the successful bidder at the sheriff's sale and filed a motion to confirm the sale. Before confirmation, the warehouse was destroyed by fire. On behalf of Waukegan Savings, the City of Waukegan (City) hired plaintiff, Lake County Grading Company, LLC (LCG), to demolish the remains of the warehouse, and LCG recorded a mechanic's lien upon completion of the work.

¶ 2        While Waukegan Savings' motion to confirm the sale was pending in the mortgage foreclosure action, LCG filed this separate action against Waukegan Savings, asserting claims to foreclose on the mechanic's lien and for breach of an oral or implied contract, unjust enrichment, and *quantum meruit*. While this action was pending, the sale was confirmed in the mortgage foreclosure action and Waukegan Savings received a judicial deed to the property. As a result of a takeover by the Federal Deposit Insurance Corporation (FDIC), defendant, First Midwest Bank (First Midwest), acquired all of Waukegan Savings' assets and liabilities, including the property. LCG added First Midwest as a defendant as the successor in interest to Waukegan Savings.

¶ 3        The trial court dismissed the mechanic's lien claim, concluding that Waukegan Savings' foreclosure notice required LCG to intervene in the mortgage foreclosure action before confirmation of the sale and that, therefore, LCG could not pursue this separate action. Because LCG failed to intervene and challenge the confirmation, the court concluded that the *lis pendens* doctrine extinguished the claims.

¶ 4        LCG appeals from the dismissal of the mechanic's lien claim and the denial of leave to amend to raise a claim for an equitable lien. LCG argues that it was not required to intervene in the mortgage foreclosure action because (1) Waukegan Savings was not a *bona fide* innocent third-party purchaser entitled to protection under the *lis pendens* doctrine, (2) LCG had no right to intervene because it lacked standing to challenge the sale confirmation, and (3) LCG is entitled to an equitable lien if it cannot recover under the Mechanics Lien Act (Act) (770 ILCS 60/0.01 *et seq.* (West 2012)).

¶ 5        First Midwest responds that (1) we lack jurisdiction, (2) LCG's arguments are forfeited, (3) the *lis pendens* doctrine bars the mechanic's lien claim because LCG had a right to intervene in the mortgage foreclosure action, (4) the mechanic's lien is technically defective, and (5) an equitable lien is inappropriate because LCG could have, but failed to, perfect its statutory mechanic's lien.

¶ 6        We hold that (1) we have jurisdiction over the appeal and LCG has not forfeited its arguments; (2) Waukegan Savings was not a *bona fide* innocent third-party purchaser because, through its conduct, it induced LCG to perform the work and file this separate action; (3) LCG alternatively had a right to intervene in the mortgage foreclosure action but

was not required to do so; and (4) the legal remedy of a statutory mechanic's lien precluded an equitable lien as a potentially viable alternative claim for LCG. Accordingly, we reverse and remand.

¶ 7                                    I. BACKGROUND
¶ 8                                A. Mortgage Foreclosure
¶ 9        As this is an appeal from the dismissal of the mechanic's lien claim and the denial of leave to file a claim for an equitable lien, the relevant facts are taken from the pleadings. On November 1, 2006, Forever Construction, Inc., the owner of the property, was the guarantor on a real estate loan extended by Waukegan Savings. The Salvation Army warehouse on the property had fallen into disrepair and was abandoned. Forever Construction defaulted on the loan.

¶ 10       Waukegan Savings filed a mortgage foreclosure action on August 14, 2008. On September 2, 2008, Waukegan Savings recorded an amended notice of foreclosure (*lis pendens*) with the Lake County recorder of deeds. Under the *lis pendens* doctrine, codified in section 2-1901 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1901 (West 2012)), one who obtains an interest in property during the pendency of a suit affecting it, and who has constructive notice of the suit, is bound by the result of that litigation as if he or she had been a party from the outset. Waukegan Savings' amended notice of foreclosure provided such constructive notice.

¶ 11       On December 10, 2010, Waukegan Savings obtained a judgment of foreclosure and became a mortgagee in possession. The judgment stated that the mortgage constituted a "valid, prior and paramount lien(s) upon the indicated interest(s) in the mortgaged real estate, which lien(s) is prior and superior to the right, title, interest, claim or lien of all parties and nonrecord claimants whose interests in the mortgaged real estate are terminated by this foreclosure."

¶ 12       The redemption rights of Forever Construction expired on March 11, 2011. On March 15, 2011, Waukegan Savings was the successful bidder at the sheriff's sale. On April 5, 2011, Waukegan Savings filed a motion to confirm the sale but did not request a hearing.

¶ 13       On May 4, 2011, the warehouse was destroyed by fire. The City informed Waukegan Savings that the damaged structure must be removed immediately because it violated safety and building regulations. A mortgage provision authorized Waukegan Savings to eliminate code violations on the property, and the foreclosure judgment required Waukegan Savings to insure the property and make reasonably necessary repairs.

¶ 14       Representatives of Waukegan Savings allegedly assured the City's building commissioner that Waukegan Savings would pay for the demolition and asked the commissioner to select a demolition contractor. The City had a longstanding business arrangement with LCG for demolition and debris removal. The City hired LCG on behalf of Waukegan Savings. LCG worked at the site from May 4, 2011, to June 3, 2011, resulting in a balance due of $112,098. On August 24, 2011, LCG recorded a mechanic's lien against the property and served Waukegan Savings.

¶ 15                              B. Mechanic's Lien Foreclosure

¶ 16        On February 14, 2012, Waukegan Savings served LCG with a demand under section 34(a) of the Act (section 34 demand) (770 ILCS 60/34(a) (West 2012)) to foreclose on the lien or risk abandoning it, and LCG timely filed a complaint to initiate this action on February 22, 2012. Soon thereafter, Waukegan Savings requested a hearing on the motion to confirm the sale in the mortgage foreclosure action. On March 15, 2012, less than a month after LCG filed its mechanic's lien action as demanded by Waukegan Savings, the trial court in the mortgage foreclosure action confirmed the sale, and Waukegan Savings received a judicial deed.

¶ 17        On October 11, 2012, after receiving the judicial deed, Waukegan Savings was seized by the FDIC and sold to First Midwest. The takeover is evidenced by an August 3, 2012, agreement between the FDIC and First Midwest to purchase virtually all of the assets, including the property.

¶ 18                                    1. Motion to Dismiss

¶ 19        On February 27, 2013, LCG filed its second amended complaint, naming First Midwest as a defendant, as the successor in interest to Waukegan Savings. The claims against First Midwest included foreclosure on the mechanic's lien, breach of an oral or implied contract, unjust enrichment, and *quantum meruit*. On July 19, 2013, on First Midwest's motion, the trial court dismissed the mechanic's lien, unjust enrichment, and *quantum meruit* claims but did not dismiss the contract claim. The court concluded that the *lis pendens* doctrine had required LCG to seek intervention in the mortgage foreclosure action and, because a final judgment had been entered in that case, the mechanic's lien was invalid.

¶ 20                                  2. Motion to Reconsider

¶ 21        The matter proceeded for 19 months, during which LCG subpoenaed the file of First Midwest's former attorneys. In it, LCG discovered Waukegan Savings' section 34 demand.

¶ 22        On February 24, 2015, LCG filed a motion to reconsider the dismissal of the mechanic's lien, unjust enrichment, and *quantum meruit* claims, arguing that the section 34 demand constituted newly discovered evidence and that the recent decision in *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, had changed the law. Specifically, LCG contended that *McCluskey* requires a party seeking to vacate a foreclosure judgment after a judicial sale to also seek to set aside the judicial sale, but that, because Waukegan Savings already had moved to confirm the sale, LCG's only remedy in the mortgage foreclosure action was to object under section 15-1508(b) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1508(b) (West 2012)), which was "unavailable" to LCG because the statute relates merely to matters involving the sale. LCG concluded that (1) the doctrine of *lis pendens* did not require LCG to intervene in the mortgage foreclosure action and (2) LCG perfected its mechanic's lien by complying with Waukegan Savings' section 34 demand. The trial court concluded that *McCluskey* did not apply and denied the motion to reconsider on June 5, 2015.

¶ 23                           3. Motion to Amend Complaint

¶ 24        On July 24, 2015, the court granted in part and denied in part LCG's motion for leave to file a third amended complaint. The court allowed amendment of the contract claim, which LCG said was based on "an implied-in-fact oral contract." The court denied leave to file a new claim for an equitable lien and to amend the mechanic's lien claim to add a reference to the section 34 demand.

¶ 25                        4. Cross-Motions for Summary Judgment

¶ 26        On December 14, 2015, LCG moved for summary judgment on the contract claim, and on March 7, 2016, First Midwest filed a cross-motion for summary judgment. The trial court entered summary judgment for First Midwest on April 15, 2016, disposing of the last pending claim. This timely appeal followed.

¶ 27                                   II. ANALYSIS

¶ 28        Rather than petitioning to intervene in the mortgage foreclosure action, LCG filed this action for, *inter alia*, foreclosure on the mechanic's lien. The purpose of the Act is to permit a lien upon premises where a benefit has been received by the owner and the value or condition of the property has been increased or improved by the furnishing of labor and materials. *North Shore Community Bank & Trust Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 81.

¶ 29        On appeal, LCG argues that the *lis pendens* doctrine did not require it to intervene in the mortgage foreclosure action and that it may pursue its mechanic's lien in this separate action under the Act. First, LCG contends that Waukegan Savings was not a *bona fide* innocent third-party purchaser because (1) Waukegan Savings, rather than some other party, contracted for the demolition work and (2) Waukegan Savings served LCG with the section 34 demand to foreclose on the mechanic's lien. Second, LCG contends that it could not intervene because it lacked standing to challenge the sale confirmation under section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2012)). Third, LCG alternatively argues that it is entitled to an equitable lien if it cannot recover under the Act. LCG does not challenge the summary judgment on the breach of contract claim or the dismissal of the unjust enrichment and *quantum meruit* claims.

¶ 30        First Midwest responds that (1) we lack jurisdiction because LCG raised its theories regarding section 34 of the Act and section 15-1508(b) of the Foreclosure Law for the first time in its motion to reconsider and because the notice of appeal fails to specify the order denying that motion; (2) alternatively, those arguments are forfeited because they were raised for the first time in the motion to reconsider; (3) the *lis pendens* doctrine renders the mechanic's lien invalid because Waukegan Savings was a *bona fide* purchaser and LCG had a right to intervene in the foreclosure action; (4) the mechanic's lien is defective because it fails to comply with section 7 of the Act (770 ILCS 60/7 (West 2012)); and (5) an equitable lien is inappropriate because LCG could have, but failed to, pursue its legal remedy of perfecting its mechanic's lien under the Act.

¶ 31                                A. Jurisdiction

¶ 32        On May 13, 2016, LCG filed an amended notice of appeal specifying three orders from which it appeals. First, the July 19, 2013, order that dismissed the mechanic's lien, unjust enrichment, and *quantum meruit* claims of the second amended complaint. Second, the July 24, 2015, order that denied in part LCG's motion for leave to file a third amended complaint. Third, the April 15, 2016, order that granted First Midwest summary judgment on the contract claim. In its brief, LCG challenges only the adverse rulings regarding the claims for a statutory mechanic's lien and an equitable lien.

¶ 33        First Midwest argues that we lack jurisdiction to consider the appeal because, although LCG's legal arguments relating the mechanic's lien to *McCluskey* and section 15-1508(b) of the Foreclosure Law were set forth in the motion to reconsider, the notice of appeal failed to specify the order denying that motion. In support, First Midwest cites Illinois Supreme Court Rule 303(b)(2) (eff. June 4, 2008), which provides that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court."

¶ 34        A notice of appeal is a procedural device filed with the trial court that, when timely filed, vests jurisdiction in the appellate court to permit review of the trial court's judgment such that it may be affirmed, reversed, or modified. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011). The supreme court has reiterated that a notice of appeal must be specific as to the judgments being submitted for review but that "[t]he notice of appeal should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal." (Internal quotation marks omitted.) *General Motors Corp.*, 242 Ill. 2d at 176. A defect in the notice will not be deemed fatal where the deficiency is of form, rather than of substance, and there is no prejudice to the appellee. *General Motors Corp.*, 242 Ill. 2d at 176.

¶ 35        The briefs, not the notice of appeal itself, specify the precise points to be relied on for reversal. *Northbrook Bank & Trust Co. v. 2120 Division LLC*, 2015 IL App (1st) 133426, ¶ 7. The notice of appeal is to be liberally construed and serves the purpose of informing the prevailing party in the trial court that the unsuccessful litigant seeks a review by a higher court. *Northbrook Bank & Trust Co.*, 2015 IL App (1st) 133426, ¶ 7.

¶ 36        First Midwest attempts to exclude certain arguments from appellate review by unreasonably parsing the legal theories that LCG raised in response to the motion to dismiss and in the motion to reconsider. We construe the notice of appeal liberally and conclude that it adequately identified the judgment appealed from and informed First Midwest of the issues to be raised. From the start, this dispute has turned on how the *lis pendens* in the mortgage foreclosure action applies to LCG's mechanic's lien. The notice specifies the July 19, 2013, dismissal order in which the trial court concluded that, once the mortgage foreclosure action culminated in the confirmation of sale, the doctrine of *lis pendens* rendered the mechanic's lien invalid. In its appellate brief, LCG argues that the doctrine does not bar a separate mechanic's lien foreclosure action. In the notice and in its brief, LCG seeks reinstatement of the claim for a mechanic's lien and a remand to the trial court for further proceedings. Thus, one can hardly argue that First Midwest has been surprised or prejudiced by the notice's failure to specify the order denying the motion to reconsider.

¶ 37 Moreover, the notice specifies the July 24, 2015, order that denied LCG leave to amend the mechanic's lien claim. The proposed amendment was a reference to the section 34 demand, which was also raised in the motion to reconsider. The denial of the motion to reconsider was a step in the procedural progression to the July 24, 2015, order denying leave to amend the mechanic's lien claim. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435-36 (1979) (an appeal from a final judgment includes every previous ruling that represents a "step in the procedural progression leading to the judgment specified" and every "preliminary determination necessary to the ultimate relief").

¶ 38 First Midwest cites *General Motors Corp.* for the proposition that the appellate brief's reference to the motion to reconsider does not confer appellate jurisdiction, but First Midwest's reliance is misplaced. In *General Motors Corp.*, the supreme court held that the appellant's "failure to file a proper notice of appeal in this case could not be remedied by addressing the issue in her appellate brief." *General Motors Corp.*, 242 Ill. 2d at 178. However, the appellant in that case attempted to broaden the scope of review by specifying an issue in the appellate docketing statement (see Ill. S. Ct. R. 312(a) (eff. Feb. 10, 2006)) that was unrelated to the orders mentioned in the notice of appeal. The supreme court held that it is axiomatic that a docketing statement does not confer jurisdiction on the appellate court and that the notice of appeal requires additional specificity. *General Motors Corp.*, 242 Ill. 2d at 177-78. In *General Motors Corp.*, the issue mentioned in the docketing statement was unrelated to the orders mentioned in the notice. LCG's docketing statement is not at issue here, and the underlying issue has been the same throughout the proceedings.

¶ 39 First Midwest's jurisdictional argument is flawed because the orders cited in the notice of appeal address the dismissal of the mechanic's lien claim, and therefore, the issue is properly before this court. The effect of LCG's delay in raising certain arguments is a question of forfeiture, not jurisdiction.

¶ 40                                    B. Forfeiture

¶ 41 First Midwest argues that LCG has forfeited its argument relating the mechanic's lien to *McCluskey* and section 15-1508(b) because it was raised for the first time in the motion to reconsider. We disagree. Section 2-1203 of the Code provides that "[i]n all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203 (West 2014).

¶ 42 First Midwest relies on *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36, which held that an issue related to a pleading was forfeited because it was argued for the first time in the motion to reconsider. The supreme court determined that the issue could have been raised sooner and did not further the purpose of a motion to reconsider, to bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law. *Evanston Insurance Co.*, 2014 IL 114271, ¶ 36. First, LCG's motion to reconsider arguably fulfilled that purpose by citing *McCluskey* as a change in the law and the section 34 demand as newly discovered evidence. Second, First Midwest does not assert that it argued forfeiture when the trial court heard LCG's motion to reconsider, and First Midwest's omission could be characterized as its own procedural default. Third, the doctrine of forfeiture is an admonition

to the parties, not a limitation on the reviewing court's jurisdiction, and the reviewing court may consider an argument not timely raised, particularly where, as here, the issue is one of law and is fully briefed by the parties on appeal. See *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11 (1996).

¶ 43                                    C. Mechanic's Lien

¶ 44                                    1. Standard of Review

¶ 45      Pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2014)), First Midwest filed a combined motion under sections 2-615 and 2-619 to dismiss the second amended complaint. The trial court dismissed the mechanic's lien claim in the second amended complaint with prejudice.

¶ 46      Although the motion to dismiss did not cite a specific section under which the mechanic's lien claim could be dismissed, section 2-619(a)(9) allows involuntary dismissal where there is other affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2-619(a)(9) (West 2014). First Midwest argued that the mechanic's lien claim was barred by the final judgment in the mortgage foreclosure action. First Midwest alternatively alleged that the claim should be dismissed under "section 2-619" because it misidentified the owner of the property and the parties to the demolition contract.

¶ 47      A motion to dismiss filed pursuant to section 2-619 of the Code admits the legal sufficiency of the complaint but raises a defense that allegedly defeats the complaint. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. When reviewing a motion filed under section 2-619, we accept as true all well-pleaded facts in the complaint, as well as all reasonable inferences that arise from them, but we will disregard all legal and factual conclusions that are not supported by specific factual allegations. *Patrick Engineering*, 2012 IL 113148, ¶ 31. We review *de novo* a trial court's decision on a motion to dismiss pursuant to section 2-619. *Patrick Engineering*, 2012 IL 113148, ¶ 31.

¶ 48                          2. First Midwest as Successor in Interest

¶ 49      LCG contends that First Midwest is responsible for not only the mechanic's lien but also Waukegan Savings' underlying conduct regarding the demolition work and the ensuing litigation. We agree with LCG that First Midwest stands in the shoes of Waukegan Savings as its successor in interest.

¶ 50      As noted, the FDIC takeover is evidenced by an August 3, 2012, agreement between the FDIC and First Midwest to purchase virtually all of Waukegan Savings' assets, including the property. Section 2.1(b) of the purchase agreement provides that First Midwest assumed at book value and agreed to "pay, perform, and discharge, all of the following liabilities" of Waukegan Savings, including "liabilities of indebtedness secured by mortgages, deeds of trust, chattel mortgages, security interests, or other liens on or affecting any Assets." In turn, section 1.3 defines "lien" in part as "any mortgage, lien, pledge, charge, assignment for security purposes, security interest or encumbrance of any kind with respect to an Asset."

¶ 51      The language of the purchase agreement is unambiguous and broad. Under the plain and ordinary meaning, First Midwest assumed and agreed to pay the indebtedness of "liens" affecting its newly acquired assets, including the property. See *Downs v. Steel & Craft Builders, Inc.*, 358 Ill. App. 3d 201, 205 (2005) (when interpreting a contract, we must

consider the entire document to give effect to the parties' intent as determined by the plain and ordinary meaning of the language of the contract). We interpret the purchase agreement as transferring to First Midwest the potential indebtedness associated with LCG's mechanic's lien and proposed equitable lien.

¶ 52                              3. *Lis Pendens* and Section 34 Demand

¶ 53        First Midwest argues that the *lis pendens* doctrine invalidated the mechanic's lien because LCG had notice of the mortgage foreclosure action and failed to petition to intervene. A *lis pendens* notice is intended to alert persons that the property in question is involved in litigation. *Kurtz v. Hubbard*, 2012 IL App (1st) 111360, ¶ 15. " 'The purpose of the doctrine of *lis pendens* is the avoidance of endless litigation of property rights precipitated by the transfer of interests in the property after litigation has begun. [Citation.] This purpose is achieved by conclusively binding the party receiving the interest to the result of the litigation as though he or she had been a party from the outset.' " *City of Chicago v. Ramirez*, 366 Ill. App. 3d 935, 944 (2006) (quoting *RTS Plumbing Co. v. DeFazio*, 180 Ill. App. 3d 1037, 1041 (1989)).

¶ 54        At common law, *lis pendens* was an equitable remedy that bound purchasers or encumbrancers of property to the results of pending lawsuits that affected the title to or lien on that property. *First Midwest v. Pogge*, 293 Ill. App. 3d 359, 363 (1997). The mere existence of a pending action provided "notice to the world," and the subsequent purchaser or encumbrancer was bound by the findings of that suit as if he or she were a party, regardless of actual or constructive notice. *Pogge*, 293 Ill. App. 3d at 363.

¶ 55        The legislature codified the *lis pendens* doctrine to ameliorate its harsh effects. Subsequent purchasers or encumbrancers, like LCG, who have an interest in real property are not bound by the results of pending suits unless they have "constructive notice" of the pending proceedings. 735 ILCS 5/2-1901 (West 2012). Before there can be "constructive notice," a *lis pendens* notice must be filed in the recorder's office. 735 ILCS 5/2-1901 (West 2012).

¶ 56        The statute, however, deals only with constructive notice. Parties with actual notice of pending proceedings affecting the property are also subject to the *lis pendens* doctrine, even if there has been no compliance with section 2-1901 of the Code. *Pogge*, 293 Ill. App. 3d at 363-64. The doctrine of *lis pendens* is meant to protect innocent subsequent purchasers. It would be inconsistent to bind those with constructive notice of the pending action but not those with actual notice. *Pogge*, 293 Ill. App. 3d at 364.

¶ 57        Section 15-1503 of the Foreclosure Law governs the filing of *lis pendens* notices in mortgage foreclosure actions, and it provides in relevant part as follows:

> "(a) A notice of foreclosure, whether the foreclosure is initiated by complaint or counterclaim, made in accordance with this Section and recorded in the county in which the mortgaged real estate is located shall be constructive notice of the pendency of the foreclosure to every person claiming an interest in or lien on the mortgaged real estate, whose interest or lien has not been recorded prior to the recording of such notice of foreclosure. *** A notice which complies with this Section shall be deemed to comply with section 2-1901 of the Code of Civil Procedure and shall have the same effect as a notice filed pursuant to that Section; however, a notice which complies with Section 2-1901 shall not be constructive

notice unless it also complies with the requirements of this Section." 735 ILCS 5/15-1503 (West 2012).

¶ 58    LCG does not allege any defects in Waukegan Savings' amended notice of foreclosure, and because the recording of the notice predated the recording of LCG's mechanic's lien, LCG is deemed to have had constructive notice of the pendency of the foreclosure action. 735 ILCS 5/15-1503 (West 2012).

¶ 59    First Midwest relies on *R.W. Boeker Co. v. Eagle Bank of Madison County*, 170 Ill. App. 3d 693 (1988), where two mortgage holders filed a complaint against the owner of a sports facility to foreclose their mortgages. A *lis pendens* notice of the pending foreclosure proceedings was recorded, and "unknown owners" of the property were served. *R.W. Boeker Co.*, 170 Ill. App. 3d at 694.

¶ 60    During the pendency of the proceedings, the facility's owner persuaded a contractor to furnish labor and materials necessary to improve the facility, and the contractor worked for seven months. The mortgage foreclosure action went to trial. The contractor recorded its claim for a mechanic's lien, and a judgment of mortgage foreclosure was entered two days later. One of the mortgage holders purchased the property and obtained a judicial deed. *R.W. Boeker Co.*, 170 Ill. App. 3d at 695.

¶ 61    Less than a month later, the contractor filed its complaint against the purchaser to foreclose its mechanic's lien. The contractor claimed to be unaware of the foreclosure proceedings, while the purchaser allegedly knew that the contractor was performing the work. The trial court held that the mechanic's lien claim was extinguished by the foreclosure sale and the issuance of a judicial deed. The court concluded that the contractor's cause of action was barred by the judgment in the mortgage foreclosure proceedings. The court therefore dismissed the complaint. *R.W. Boeker Co.*, 170 Ill. App. 3d at 696.

¶ 62    On appeal, the appellate court held, *inter alia*, that the *lis pendens* notice gave the contractor constructive notice of the mortgage foreclosure proceedings and that the contractor "consequently acquired its rights *pendente lite*." *R.W. Boeker Co.*, 170 Ill. App. 3d at 698. The appellate court concluded that, because the *lis pendens* statute applies unequivocally to all interests in or liens upon property, regardless of their nature, the contractor was bound by the mortgage foreclosure proceedings and had no claim for any kind of a lien on the sports facility property. *R.W. Boeker Co.*, 170 Ill. App. 3d at 698.

¶ 63    Here, Waukegan Savings hired LCG to work on the property from May 4, 2011, to June 3, 2011, and LCG filed a mechanic's lien on August 24, 2011. Six months later, on February 14, 2012, Waukegan Savings demanded under section 34 that LCG foreclose on the lien within 30 days. On February 22, 2012, LCG timely filed this action, as demanded by Waukegan Savings. Meanwhile, on March 15, 2012, Waukegan Savings sought a hearing and obtained a confirmation of sale in the mortgage foreclosure action without LCG petitioning to intervene.

¶ 64    At first blush, a straightforward application of the *lis pendens* doctrine would appear to protect First Midwest against any claim not raised during the pendency of the mortgage foreclosure action. However, unlike the purchaser in *R.W. Boeker Co.*, Waukegan Savings, through its conduct, waived *lis pendens* protection against outside claims by LCG. In *R.W. Boeker Co.*, the facility owner, not the purchaser, persuaded the contractor to perform the work. Here, Waukegan Savings induced LCG to provide its services and then demanded under section 34 that LCG commence suit to enforce the lien within 30 days, which LCG did.

¶ 65    Section 34 of the Act provides a method for a property owner to force the issue on the validity of claims already filed and to clear a cloud on the owner's property from the filing of a lien. Section 34 provides that "[u]pon written demand of the owner, lienor, or any person interested in the real estate *** served on the person claiming the lien ***, requiring suit to be commenced to enforce the lien or answer to be filed in a pending suit, suit shall be commenced or answer filed within 30 days thereafter, or the lien shall be forfeited." 770 ILCS 60/34(a) (West 2012).

¶ 66    Under section 34, the lienholder can be demanded to (1) commence suit to enforce the lien or (2) file an answer in a pending suit. Here, the mortgage foreclosure action was pending when Waukegan Savings made its section 34 demand, but LCG could not file an answer because it was not a party to that action. LCG filed this action to comply with section 34 and avoid forfeiting its claim. See 770 ILCS 60/34(a) (West 2012); *TSP-Hope, Inc. v. Home Innovators of Illinois*, 382 Ill. App. 3d 1171, 1175-76 (2008) (a lienholder forfeits its mechanic's lien if it fails to commence an action to foreclose the lien within 30 days after receipt of the owner's written demand to sue, as required by section 34).

¶ 67    If LCG had petitioned to intervene in the mortgage foreclosure action instead, First Midwest could have argued that LCG's technical noncompliance with section 34 resulted in forfeiture of the lien. Indeed, Waukegan Savings' section 34 demand followed the statute, stating, "[i]f you fail to release the lien or *fail to file suit*, we will seek to have the Court remove the lien." (Emphasis added.) As was its right, Waukegan Savings demanded that LCG preserve and resolve the lien specifically through this action. The section 34 demand neither asked LCG to pursue the claim generally (which theoretically would encompass intervention in the mortgage foreclosure action) nor communicated any assurance that Waukegan Savings would acquiesce to LCG pursuing the lien in the mortgage foreclosure action.

¶ 68    There is precedent for preventing a property owner from pursuing a litigation strategy that is inconsistent with its demand under section 34. Although the *lis pendens* doctrine was not at issue, this court held that a party making a section 34 demand waives its right to compel arbitration. *Illinois Concrete-I.C.I., Inc. v. Storefitters, Inc.*, 397 Ill. App. 3d 798, 803 (2010).

¶ 69    Accepting as true all well-pleaded facts, as well as all reasonable inferences that arise from them, we conclude that Waukegan Savings was not an innocent purchaser for whom protection is intended under the *lis pendens* doctrine. "[T]he filing of *lis pendens* notice is designed to protect a plaintiff from third persons who might acquire, during the pendency of litigation, interest in the subject matter of the litigation such as would preclude the court from granting the plaintiff the requested relief." *Admiral Builders Corp. v. Robert Hall Village*, 101 Ill. App. 3d 132, 136 (1981) (citing 51 Am. Jur. 2d *Lis Pendens* § 1 (1970), and *E&E Hauling, Inc. v. County of Du Page*, 77 Ill. App. 3d 1017, 1023 (1979)). Enforcing the *lis pendens* doctrine in favor of Waukegan Savings and against LCG would not further this purpose.

¶ 70    Waukegan Savings allegedly induced LCG to provide its services during the pendency of the mortgage foreclosure action and then to file this action to preserve and resolve the mechanic's lien. Less than a month after LCG filed this suit as requested, Waukegan Savings attempted to extinguish the claim by resurrecting its 11-month-old motion to confirm the sale in the mortgage foreclosure action. Now, First Midwest feigns surprise and asserts prejudice

because LCG followed the section 34 demand rather than intervening in the mortgage foreclosure action, which might have resulted in forfeiture of the claim. To invoke the *lis pendens* doctrine in denying the claim's validity under these circumstances is legal gamesmanship.

¶ 71     At oral argument, First Midwest proposed that, to preserve its mechanic's lien, LCG should have filed this action *and* petitioned to intervene in the mortgage foreclosure action. While this would have been the most prudent course, requiring those redundant actions would (1) impose an undue burden on LCG, (2) excuse the affirmative conduct by which Waukegan Savings induced LCG to perform the work and file this action, and (3) not further the *lis pendens* purpose of protecting a *bona fide* innocent third-party purchaser against outside claims.

¶ 72     We emphasize that, under the *lis pendens* doctrine, the confirmation of sale extinguished all outside claims other than LCG's claims arising from its dealings with Waukegan Savings. Our holding is limited to these unusual circumstances.

¶ 73                     4. Intervention in Mortgage Foreclosure Action

¶ 74     LCG argues that this action was necessary because LCG lacked standing to pursue its claim in the mortgage foreclosure action. As mentioned, First Midwest responds that LCG not only had standing but was required to intervene. We conclude that LCG could have intervened under the Foreclosure Law, but was not required to do so, because Waukegan Savings had waived its *lis pendens* protection by demanding this separate action.

¶ 75     The general rule for intervention is found in section 2-408 of the Code, which allows, in certain circumstances, nonparties to intervene in proceedings. 735 ILCS 5/2-408 (West 2012); *MidFirst Bank v. McNeal*, 2016 IL App (1st) 150465, ¶ 15. The statute recognizes that intervention may be either permissive or of right, but in either circumstance, a timely application to intervene must be made. *McNeal*, 2016 IL App (1st) 150465, ¶ 15. Specifically, section 15-1501 allows a nonparty to intervene in foreclosure proceedings, either by right or in the court's discretion, depending on the circumstances, until an order confirming the sale is entered. 735 ILCS 5/15-1501 (West 2012); *McNeal*, 2016 IL App (1st) 150465, ¶ 15.

¶ 76     Section 15-1501(d) gave LCG the right to intervene in the foreclosure proceedings. 735 ILCS 5/15-1501(d) (West 2012) ("Any person who has or claims an interest in real estate which is the subject of a foreclosure *** shall have an unconditional right to appear and become a party in such foreclosure in accordance with subsection (e) of Section 15-1501 ***."). In turn, section 15-1501(e)(3) provides in part that "[a]fter the sale of the mortgaged real estate in accordance with a judgment of foreclosure and prior to the entry of an order confirming the sale, a person who has or claims an interest in the mortgaged real estate, may appear and become a party, on such terms as the court may deem just, for the sole purpose of claiming an interest in the proceeds of sale." 735 ILCS 5/15-1501(e)(3) (West 2012). Thus, LCG's grounds for intervention would have been to recover the debt from the sale proceeds by challenging the foreclosure judgment against Forever Construction, challenging Waukegan Savings' motion for confirmation of the sale, or both.

¶ 77     In *McCluskey*, our supreme court held that, prior to filing a motion to confirm a sale, a borrower may seek to vacate the default judgment of foreclosure under the standards set forth in section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2012)). After the motion to

confirm has been filed, the borrower's arguments are limited by section 15-1508(b) of the Foreclosure Law (735 ILCS 5/15-1508(b) (West 2012)). *McCluskey*, 2013 IL 115469, ¶ 27. Here, LCG did not begin working on the property, and its interest in the property did not accrue, until after Waukegan Savings moved to confirm the sale. Thus, if LCG had intervened to foreclose its mechanic's lien, its arguments would have been limited by section 15-1508(b) of the Foreclosure Law.

¶ 78    Section 15-1508(b) of the Foreclosure Law provides in relevant part that, "[u]nless the court finds that (i) a notice required in accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or *(iv) justice was otherwise not done*, the court shall then enter an order confirming the sale." (Emphasis added.) 735 ILCS 5/15-1508(b) (West 2012). Upon obtaining leave to intervene, LCG could have argued that under section 15-1508(b)(iv) justice would not be done if the sale were confirmed without accounting for its mechanic's lien. See *McCluskey*, 2013 IL 115469, ¶ 25 ("[T]he justice provision under section 15-1508(b)(iv) acts as a safety valve to allow the court to vacate the judicial sale and, in rare cases, the underlying judgment, based on traditional equitable principles."). Thus, under the facts as alleged, LCG had a path to obtaining recovery in the context of the mortgage foreclosure action.

¶ 79    However, Waukegan Savings steered LCG off the intervention path. Waukegan Savings could have invoked section 15-1501(b)(9) of the Foreclosure Law to name LCG as a party in the mortgage foreclosure action. See 735 ILCS 5/15-1501(b)(9) (West 2012) ("Any party may join as a party any other person, although such person is not a necessary party, including *** [a]ny person who may have a lien under the Mechanic's Lien Act."). Instead, Waukegan Savings demanded under section 34 of the Act that LCG file this action.

¶ 80                                    5. Alleged Defects

¶ 81    Upon determining that the *lis pendens* doctrine did not extinguish LCG's mechanic's lien, we reach First Midwest's argument that the lien nevertheless is defective for noncompliance with section 7 of the Act. First Midwest argues that the lien misidentified (1) the parties to the "purported oral agreement" for the demolition services and (2) the owners of the property. Section 7 provides in relevant part as follows:

> "No contractor shall be allowed to enforce such lien against or to the prejudice of any other [third-party] creditor or incumbrancer or purchaser, unless [(1)] within 4 months after completion *** he or she shall either bring an action to enforce his or her lien therefor or shall file in the office of the recorder *** a claim for lien, [(2)] verified by the affidavit of himself or herself, or his or her agent or employee, which shall consist of [(3)] a brief statement of the claimant's contract, [(4)] the balance due after allowing all credits, and [(5)] a sufficiently correct description of the lot ***. *** No such lien shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this Act, unless it shall be shown that such error or overcharge is made with intent to defraud ***." 770 ILCS 60/7(a) (West 2012).

¶ 82    The lien states that LCG "hereby files a claim for lien against Forever Construction, Inc. and Waukegan Savings and Loan Association, hereinafter referred to as 'owners.' " The lien also states that, "on May 4, 2011, [LCG] made an oral contract with said owners' (1)

authorized agent (2) to perform demolition of structure and removal of debris for the building (3) erected on said land for the sum of $112,098.02 and on June 3, 2011, completed thereunder (4) all work."

¶ 83    First Midwest contends that the lien is invalid because it misidentified Waukegan Savings as an owner of the property when it was only a mortgagee. The complaint alleged that Waukegan Savings asserted ownership when the work was performed and that it subsequently received a judicial deed to the property. Upon expiration of its right of redemption on March 11, 2011, Forever Construction's ownership was reduced to bare legal title. Thereafter, Waukegan Savings took possession, was the successful bidder at the sheriff's sale, and allegedly contracted for the demolition work under the authority of the foreclosure judgment and the terms of the mortgage. LCG's identification of Waukegan Savings as an owner is understandable, as Waukegan Savings acted as the owner or the agent of the owner in its dealings with LCG. At all relevant times, either Forever Construction or Waukegan Savings had title to the property, and the lien identified both as owners, even though Waukegan Savings technically was not an owner when the lien was recorded. First Midwest cites no authority for the proposition that a lien is invalid because it misidentifies a nonowner, even when the actual owner is accurately identified in compliance with section 7. A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013). See *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) ("Both argument and citation to relevant authority are required. An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of the rule."). To the extent that Waukegan Savings was technically misidentified as an owner because it had not acquired title by the time the lien was filed, its inclusion in the lien was mere surplusage and any error under section 7 was *de minimis* and not prejudicial.

¶ 84    First Midwest also asserts, without citation to the record, that the lien misidentified the parties to the demolition agreement because "the pleadings and affidavits filed in this case allege that Waukegan Savings and *the City* were the only parties" to the agreement. (Emphasis in original.) First Midwest then argues, without citation to authority, that the lien was fatally defective because "the Owner was never alleged to be a party to the Purported Oral Agreement." Our review shows that LCG consistently has alleged that it entered into the agreement with the successor in interest of First Midwest, Waukegan Savings. The lien states that LCG entered into the oral contract with the owners' authorized agent. At minimum, Waukegan Savings was acting as an agent of Forever Construction when the foreclosure judgment and the mortgage authorized the bank to make repairs that were reasonably necessary for the preservation of the property. The lien, the pleadings, and the affidavits have consistently identified Waukegan Savings, acting on behalf of Forever Construction, as a party to the demolition agreement. We reject First Midwest's claim that the lien violated section 7 by misidentifying the parties to the demolition agreement.

¶ 85                                        D. Equitable Lien

¶ 86    Finally, we consider whether the trial court erred in denying LCG leave to file a third amended complaint that included a claim for an equitable lien. The right to amend a complaint is not absolute but is a matter within the trial court's discretion. *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 44. Accordingly, we will not reverse the trial court's

decision absent an abuse of that discretion. "A court abuses its discretion only if it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law; or if no reasonable person would take the position adopted by the court." *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12.

¶ 87    Generally, a trial court should exercise its discretion liberally in favor of allowing amendments to pleadings if doing so will further the ends of justice, and the court should consider, among other things, whether the proposed amendment would cure the defective pleading or state a claim. *Parille*, 2016 IL App (2d) 150286, ¶ 44. Here, the trial court did not abuse its discretion because the proposed claim for an equitable lien was precluded by the availability of a legal remedy.

¶ 88    In *R.W. Boeker Co.*, where the sports facility owner persuaded the contactor to work on the property despite the *lis pendens* notice of the mortgage foreclosure proceedings, the contractor argued on appeal that it was entitled to recover the reasonable value of its improvements under an equitable lien theory. *R.W. Boeker Co.*, 170 Ill. App. 3d at 696. The appellate court determined that the equitable lien issue was not properly before it because (1) the complaint was by its terms an action to foreclose a mechanic's lien and (2) the contractor raised the equitable lien theory for the first time on appeal. *R.W. Boeker Co.*, 170 Ill. App. 3d at 696.

¶ 89    In *dicta*, the court addressed the merits, noting that the essential elements of an equitable lien are "(1) a debt, duty or obligation owing by one person to another, and (2) an identifiable *res* to which that obligation fastens." *R.W. Boeker Co.*, 170 Ill. App. 3d at 697. The court determined that no obligation existed between the contractor and the first mortgage holder, who purchased the property at the judicial sale. Noting the well-settled principle that "[i]t is true that if a stranger enters upon the property of another and makes improvements, and the owner of that property stands by and permits the stranger to expend money in improving his land, then the owner may be compelled to pay for such improvements," the court remarked that the purchaser was not an owner when the contractor improved the sports facility and that the purchaser's "sole interest in the property was that of lienholder." *R.W. Boeker Co.*, 170 Ill. App. 3d at 697.

¶ 90    The court emphasized that, until delivery of the judicial deed, the purchaser had acquired no title to the property, either legal or equitable, and simply did not have a sufficient ownership interest to prevent the contractor's expenditure of time and money. Moreover, the purchaser was not a party to the contract with the sports facility owner. *R.W. Boeker Co.*, 170 Ill. App. 3d at 697.

¶ 91    Unlike the purchaser in *R.W. Boeker Co.*, Waukegan Savings had a substantial interest in the property when LCG performed the demolition work. A mortgage provision authorized Waukegan Savings to eliminate code violations, and following the December 10, 2010, judgment of foreclosure, Waukegan Savings became a mortgagee in possession. The judgment required Waukegan Savings to insure the property and make reasonably necessary repairs. Then, when the warehouse burned down, Waukegan Savings allegedly promised to pay for the demolition and asked the City to select a demolition contractor. The City hired LCG on the bank's behalf. Thus, Waukegan Savings had control over LCG's expenditure of time and money in improving the property.

¶ 92    However, an equitable lien cannot be imposed when a lienor fails to perfect its mechanic's lien. *R.W. Boeker Co.*, 170 Ill. App. 3d at 697. Because we have determined that

LCG may pursue its mechanic's lien claim, LCG has an adequate legal remedy. See *First Bank of Roscoe v. Rinaldi*, 262 Ill. App. 3d 179, 190 (1994) (although an equitable lien may be imposed in the absence of an express agreement out of considerations of fairness, there must be some ground for the intervention of equity, such as the absence of an adequate remedy at law). If LCG lacked the legal remedy of foreclosing on its mechanic's lien, it potentially could have recovered under the theory of an equitable lien.

¶ 93                               III. CONCLUSION

¶ 94     After filing its *lis pendens* notice of the mortgage foreclosure action, Waukegan Savings induced LCG to provide demolition services and then file this action to preserve and resolve its mechanic's lien. Less than a month after LCG filed suit, as Waukegan Savings had demanded under section 34 of the Act, Waukegan Savings obtained a confirmation of sale in the mortgage foreclosure action to extinguish all outside claims. Under these unique circumstances as alleged by LCG, we hold that Waukegan Savings was not a *bona fide* innocent third-party purchaser of the property and was not entitled to protection under the *lis pendens* doctrine against LCG's outside mechanic's lien claim. Although LCG could have pursued its mechanic's lien through intervention in the mortgage foreclosure action, we hold that it was not required to do so. Waukegan Savings' invocation of section 34 mandated this action to preserve the mechanic's lien, and requiring a redundant intervention in the mortgage foreclosure action would have (1) imposed an undue burden on LCG, (2) excused the affirmative conduct by which Waukegan Savings induced LCG to perform the work and file this action, and (3) not furthered the *lis pendens* purpose of protecting a *bona fide* innocent third-party purchaser against outside claims.

¶ 95     The dismissal of the mechanic's lien claim is reversed, and the cause is remanded for further proceedings on that count. However, the trial court did not abuse its discretion in denying LCG leave to add a claim for an equitable lien because such a claim was precluded by the availability of a legal remedy.

¶ 96     Reversed and remanded.