**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240326-U

Order filed August 21, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0326 Circuit No. 24-DV-54 |
| JOSEPH A. PEREZ-SALAZAR, | ) ) ) | The Honorable Amy M. Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Holdridge and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The circuit court did not abuse its discretion when it denied the defendant's motion for relief regarding conditions imposed on his pretrial release.

¶ 2    The defendant, Joseph Perez-Salazar, was charged with two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2), (b) (West 2022)). The State filed a petition to deny pretrial release, which the circuit court denied. The court admitted Perez-Salazar to pretrial release subject to certain conditions. On appeal, Perez-Salazar argues that the circuit court abused its discretion when it imposed conditions on his pretrial release. We affirm.

I. BACKGROUND

¶ 4        The State's petition to deny pretrial release contained the following factual basis. On February 3, 2024, an officer was dispatched to a residence for a report of domestic battery where the victim had been cut with a knife by her boyfriend, later identified as Perez-Salazar. Upon arriving at the scene, the officer encountered Perez-Salazar standing next to the apartment. As the officer was approaching, Perez-Salazar threw a "large butcher-style knife" over the fence, which was recovered later, and said he did not want to get shot. The officer detained Perez-Salazar for his safety. In doing so, he observed minor lacerations on Perez-Salazar's left forearm. He asked Perez-Salazar where the lacerations came from, and Perez-Salazar stated that "he was a cutter and he just did that to himself." The officer then went into the residence and met with the victim. She told the officer that she and Perez-Salazar had been drinking and began arguing "over her not being faithful." She indicated that "after some time of arguing, she got up and went into the kitchen and said to [Perez-Salazar] that she was going to put herself out of her misery and cut herself. [Perez-Salazar] said I'll do you one better. I'll do it for you and got up, grabbed a knife, and began to cut her thigh." The victim had multiple minor lacerations on her thigh. She indicated that after cutting her, Perez-Salazar ran into the other room and began to cut himself on the arm. At that point she called the police. The victim indicated that she did not want to proceed with charges against Perez-Salazar.

¶ 5        The petition further alleged that, at the time of the offense, Perez-Salazar was on pretrial release for two pending charges of failure to register as a violent offender against youth, a Class 3 felony. He was also on court supervision for driving under the influence of alcohol (DUI). The petition alleged that "[a]lthough the defendant could be placed on electronic monitoring," such monitoring would not prevent Perez-Salazar from going to the residence and he had already

demonstrated "by being charged with new offenses while on court supervision and pretrial release that he will not follow court orders."

¶ 6        A pretrial risk assessment indicated that Perez-Salazar was a Level 4 risk, with Level 6 being the highest possible risk. Perez-Salazar had an extensive criminal history, which included convictions for DUI, unlawful possession of a firearm, disorderly conduct, burglary, home invasion, and criminal damage to property. He had charges pending for resisting a peace officer, theft, and criminal trespass, for which he had failed to appear on February 2, 2024.

¶ 7        On February 5, 2024, a hearing was held on the State's petition to deny pretrial release. In response to the State's factual basis, defense counsel called the victim to testify, who stated that Perez-Salazar "never laid a finger on [her]" and that she had cut herself with the knife. She indicated that she had "a history of cutting." At the time of the incident, she and Perez-Salazar had been dating for six months and living together for one week. She stated, "The only reason [Perez-Salazar] made physical contact was to take the knife away from me so I would stop cutting myself." The State indicated that it would continue to pursue its petition to deny pretrial release. The only argument it provided was to "point out [Perez-Salazar's criminal] history." Defense counsel argued that the State did not prove by clear and convincing evidence that Perez-Salazar committed the offense and requested his release. Counsel stated, "The witness testified that there was no threat or injury. Obviously she's here today. I believe that shows that she's not afraid of [Perez-Salazar]. She's not afraid of [*sic*] her safety."

¶ 8        The circuit court found that the State did not prove "by clear and convincing evidence the domestic battery allegations." As for conditions of release, the State requested no contact between Perez-Salazar and the victim. The court imposed that condition and additionally ordered global-positioning system (GPS) monitoring. The court stated, "That GPS device has got to be worn by

3

you and report to pretrial services until there is some clarification as to what in the world is going on between you and the witness *** as well as the other named individuals in the [other charged case] as well as the residence location."

¶ 9 A subsequent hearing was held on May 1, 2024. At the hearing, defense counsel stated that he wanted "to address specifically the condition of the electronic monitoring." Counsel stated that Perez-Salazar and the victim "don't have a relationship at this point and *** he is not objecting to the no contact provisions, just the GPS monitoring. He indicates he has no reason to have contact with her or the location." Counsel stated that there was no basis to have Perez-Salazar on electronic monitoring, Perez-Salazar broke his ankle, and would not "run anywhere." Counsel again indicated, "he has no objection to the no contact provisions." The State indicated that Perez-Salazar "picked up" two cases while he was on bond. The State argued that the victim's testimony at the initial hearing contradicted the information she provided the police and that the police gathered at the scene. The State discussed Perez-Salazar's criminal history and stated that it believed GPS monitoring was appropriate "considering the history the Perez-Salazar has, the failure to register, the two new cases while on bond, one of them being a domestic." The court found that the conditions continued to be necessary.

¶ 10 At the close of the hearing, Perez-Salazar filed a motion for relief, arguing that the court erred in imposing the conditions on his release. A hearing on the motion was held on May 13, 2024. The court denied the motion, noting that the victim's recantation "didn't necessarily surprise me." The court noted that GPS monitoring could only be imposed upon a finding that there were no less restrictive conditions available.

¶ 11 Perez-Salazar filed a timely notice of appeal from the circuit court's order denying his motion for relief.

4

¶ 12                                II. ANALYSIS

¶ 13          On appeal, Perez-Salazar argues that the circuit court erred when it imposed conditions on his pretrial release because the State failed to present clear and convincing evidence that the conditions were necessary to ensure his appearance or protect an identifiable person from harm.

¶ 14          Initially, we note that the circuit court's order that admitted Perez-Salazar to pretrial release and imposed conditions on that release was entered on February 5, 2024. At that time, Illinois Supreme Court Rule 604(h) provided that a defendant could appeal from an order imposing conditions of pretrial release, but a notice of appeal from that order had to be filed within 14 days. Ill. S. Ct. R. 604(h)(1), (2) (eff. Dec. 7, 2023).

¶ 15          Effective April 15, 2024, our supreme court amended Rule 604(h), which, among other things, removed the 14-day appeal-filing requirement and replaced it with a form of review in the circuit court as a prerequisite for a defendant to appeal in pretrial release cases. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). A defendant is now required to file a written "motion for relief" that includes "the same relief to be sought on appeal and the grounds for such relief" before review can be sought in this court. *Id.* In this case, Perez-Salazar filed a motion for relief on May 1, 2024, pursuant to the amended version of Rule 604(h).

¶ 16          Our supreme court has held that procedural changes to laws apply to ongoing proceedings. *People v. Hunter*, 2017 IL 121306, ¶¶ 30-31. A notice of appeal is a procedural mechanism. *Lake County Grading Company, LLC v. Forever Construction Company, Inc.*, 2017 IL App (2d) 160359, ¶ 34. In this case, the proceedings involving Perez-Salazar were still ongoing when he filed his motion for relief on May 1, 2024. Accordingly, Perez-Salazar's failure to file a timely notice of appeal from the February 2024 order under the old version of Rule 604(h) does not impact

our jurisdiction over this appeal, as he filed a timely notice of appeal from the circuit court's denial of his motion for relief.

¶ 17     We now turn to the merits of the appeal. Decisions regarding what conditions should be imposed on a defendant's pretrial release are reviewed for an abuse of discretion. See *People v. Reed*, 2023 IL App (1st) 231834, ¶ 31.

¶ 18     Where, as here, the circuit court finds that the proof is not evident that defendant committed a detainable offense, "the court must determine which pretrial release conditions, 'if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release.' " *People v. Morales*, 2024 IL App (2d) 230597, ¶ 13 (quoting 725 ILCS 5/110-5(a) (West 2022)).

> "In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. [725 ILCS 5/110-5(a) (West 2022).] In addition, '[t]he court shall impose any conditions that are mandatory under subsection (a) of Section 110-10. The court may impose any conditions that are permissible under subsection (b) of Section 110-10. The conditions of release imposed shall be the least restrictive conditions or combination of conditions necessary to reasonably ensure the appearance of the defendant as required or the safety of any other person or persons or the community.' " (Emphases omitted.) *Id.* (quoting 725 ILCS 5/110-5(c) (West 2022)).

When the victim is a family or household member, "conditions *shall* be imposed at the time of the defendant's release that restrict the defendant's access to the victim." (Emphasis added.) *Id.* § 110-10(d). This includes requiring defendant refrain from contacting the victim or entering the victim's residence for a minimum period of 72 hours following defendant's release. *Id.*

> "Electronic monitoring, GPS monitoring, or home confinement can only be imposed as a condition of pretrial release if a no less restrictive condition of release or combination of less restrictive condition of release would reasonably ensure the appearance of the defendant for later hearings or protect an identifiable person or persons from imminent threat of serious physical harm." *Id.* § 110-5(g).

¶ 19        We find the court did not abuse its discretion by requiring Perez-Salazar to refrain from contacting the victim or the residence and wear a GPS monitoring device. First, the statute *requires* the court to restrict a defendant's access to a victim when such defendant is charged with domestic battery and the defendant and victim were living together, as they were here. See *id.* While the statute requires a minimum period of 72 hours, it does not set a maximum period of no contact. We cannot say the court erred in ordering indefinite no contact. The court indicated its awareness of domestic violence recantations. It believed that no contact was necessary to determine the truth about the allegations.

¶ 20        Second, the circuit court was clearly concerned about Perez-Salazar contacting the victim. Perez-Salazar had a history of committing offenses while on pretrial release, thus indicating he may not have abided by the no contact condition on his own. While it may not have been entirely clear to the court whether Perez-Salazar committed this offense, we note that "[d]omestic violence cases *** have a low victim-cooperation rate, which is usually due to either a general fear of the defendant or some remaining partiality on the victim's part toward the defendant" (*People v.*

7

*Stechly*, 225 Ill. 2d 246, 341 (2007) (Thomas, C.J. dissenting)). Here, even when the victim was speaking to the police immediately after the incident, she stated that she did not want to pursue charges against Perez-Salazar. The court could have determined that GPS monitoring was the least restrictive condition to protect the victim. In its petition, the State discussed how GPS monitoring would be an option, but GPS would not prevent Perez-Salazar from contacting the victim and he also had a history of failing to follow court orders. Moreover, the court's oral findings were sufficient, particularly where, at the hearing on Perez-Salazar's motion for relief, the court specifically indicated that GPS monitoring could only be imposed when it was the least restrictive condition. Under these circumstances, we hold that the circuit court did not abuse its discretion when it denied Perez-Salazar's motion for relief.

¶ 21                                    III. CONCLUSION

¶ 22          The judgment of the circuit court of Will County is affirmed.

¶ 23          Affirmed.