2021 IL App (2d) 191034-U
No. 2-19-1034
Order filed November 4, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JAMES FARAH and RECG, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 17 L 797 |
| | ) | |
| THE GOOCH FIRM f/k/a Gauthier | ) | |
| & Gooch, and THOMAS W. GOOCH | ) | Honorable |
| | ) | Michael J. Fusz, |
| Defendants-Appellees. | ) | Judge, Presiding. |

**ORDER**

JUSTICE BIRKETT delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

¶ 1   *Held*:   The trial court's judgment is affirmed where plaintiffs failed to show that, but for defendants' negligence, plaintiffs would have been successful in setting aside the underlying foreclosure sale. Additionally, the applicable two-year statute of limitations barred plaintiffs' remaining claims of legal malpractice.

¶ 2   Plaintiffs, James Farah (Farah) and RECG, LLC (RECG), appeal the trial court's orders resolving cross-motions for summary judgment in favor of defendants, The Gooch Firm f/k/a Gauthier & Gooch (the Gooch firm) and Thomas W. Gooch (Gooch), as to plaintiffs' legal malpractice claims. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    We summarize the relevant facts from the record on appeal. Farah is the sole manager of RECG, a limited liability company that both he and his wife own. RECG operates by purchasing real estate properties, improving those properties, and then renting them out. In recent years, RECG began exploring "the prospect of purchasing properties at foreclosure sales." To this end, RECG, through Farah, asked the law firm of Hawbecker & Garver, LLC (Garver) to help identify properties "with good title" and "no big issues."

¶ 5    On October 25, 2013, Farah asked a paralegal with Garver whether the firm would be able to "look at" a property located at 12 N. Prospect Ave in Clarendon Hills (the property). Farah did not specifically ask Garver to perform "any particular type of search," but instead, attempted to convey his "goal of [establishing whether the property had] clean title and [to avoid] landmines and things like that." On October 29, 2013, before receiving a substantive response regarding the property,[1] Farah sent an email to Garver's paralegal, indicating that he was currently attending the property's auction and again requested her to "let [him] know if [she] had any results" regarding the property. The paralegal responded, providing Farah with certain information she had found on the property, which did not include any indication of any superior mortgages or liens on the property. RECG was the high bidder at the auction and purchased the State Bank of Countryside's (Countryside) prior mortgage on the property for $373,000. After the auction, another prospective bidder informed Farah that he had previously been interested in the property, "but *** they didn't know if there was clear title." Farah again emailed Garver's paralegal concerning this conversation and asked whether there was "anything that [he] should be aware of related to this." The paralegal

---

[1] On October 28, 2013, the Garver's paralegal responded, indicating that she was unable to check the property, because "Du[ ]Page County's websites (treasurer & recorder) [were] down."

responded:

> "[Farah], [o]ur office can only tell you what is on the record at the Du[ ]Page County Recorder's website. I did not see any issues regarding ownership, but as you're aware, all of our normal disclaimers apply. I saw an assignment of rents in 2009[,] meaning a possible tenant, but that is about it. We have only facially taken a look at the chain, we have not reviewed each document in detail."

¶ 6 On November 15, 2013, Farah attended a Du Page circuit court (the foreclosure court) hearing to confirm the sale. There, he presented a *pro se* "Affadavit [*sic*] and Petition for Immediate Possession" on behalf of RECG. The foreclosure court granted Farah's petition, and in its order confirming the sheriff's sale, specified that "[RECG] is entitled to immediate possession of the real estate and a [d]eed of [c]onveyance." The order further provided that a "[d]eed of sale should be issued to RECG, LLC, an Illinois limited liability company."

¶ 7 Immediately after the hearing, Farah met with an attorney, Janice Driggers, (Driggers) at Burke & Handley (Burke), who represented Countryside, and told Farah about "some type of lien" on the property. After Farah realized he should "look into" the lien, he learned that he had only purchased a junior mortgage and that a senior mortgage still existed over the property, which was held by JPMorgan Chase Bank (Chase).[2] Meanwhile, on November 18, 2013, Burke sent a copy of the circuit court's November 15, 2013 court order to the property's previous owner, Marcia Roubek, as well as Chase.

¶ 8 In February 2014, Farah first called the Gooch firm and discussed a potential malpractice suit against Garver. The parties also discussed Chase's senior mortgage, and Gooch purportedly

---

[2] Farah indicated that he could not remember the date he learned about the senior mortgage.

speculated that he "could negotiate [the purchase of that mortgage] *** for *** pennies on the dollar." Following their meeting, the Gooch firm presented plaintiffs with an engagement letter, specifying that the firm would represent plaintiffs in "a legal malpractice matter" against Garver. Gooch signed the letter on February 6, 2014.

¶ 9    On February 21, 2014, Chase filed a notice for its motion for judgment of foreclosure and order of sale. Plaintiffs were not included on the service list, and Chase failed to otherwise provide service of the notice to plaintiffs. On February 27, 2014, the foreclosure court entered its judgment of foreclosure. The judgment erroneously listed the property's owner as being Marcia Roubek, even though it had previously granted RECG immediate possession of the property. Chase did not serve plaintiffs with a copy of the judgment.

¶ 10    On March 29, 2014, Chase sold and assigned its mortgage interest on the property to Federal National Mortgage Association (Fannie Mae). On April 14, 2014, Chase filed its notice of sheriff's sale for the property, which indicated the sale was scheduled to take place on June 3, 2014. Once again, Chase did not serve a copy of this notice to plaintiffs.

¶ 11    On May 22, 2014, Farah spoke with Driggers, who told him that "action against him on the Chase [mortgage] was imminent." That day, Driggers also faxed Farah a copy of the notice of the upcoming sheriff's sale. On May 23, 2014, Farah added handwritten amendments to the Gooch firm's engagement letter, specifying that "[the Gooch firm] will, as part of this retainer, represent [Farah and RECG] in negotiating a resolution of any lien on the property which was incurred in relation to this malpractice matter." Farah wrote his initials next to the amendment.[3]

_____

[3] The parties disagreed whether Gooch also initialed the amendments. However, for purposes of the parties' cross motions for summary judgment, defendants ceded this point.

¶ 12    On June 2, 2014, Farah reached out to Gooch—presumably via email—requesting advice concerning the upcoming sale. Gooch responded, "Unless I am confused, [Chase is] proceeding against the property in a foreclosure complaint because [their] mortgage was missed by your former attorney, correct? That's what our malpractice complaint is all about." Gooch further advised Farah that Chase couldn't "collect a deficiency judgment" through foreclosure and that "the problem" was that Chase was unaware that Farah currently owned the property. Gooch additionally provided that once Chase "[found] out" about [Farah], they would "add [him] as a defendant."

¶ 13    On the morning of June 3, 2014, Farah reached out to Gooch and asked whether he should attend the upcoming sheriff's sale and make a bid for the Chase mortgage. Gooch advised him that doing so would be imprudent. Later that day, the Du Page County Sheriff held the sale for Chase's senior mortgage on the property. Farah did not attend the auction and consequently failed to make any bids on the property. At the conclusion of the auction, Grandview Capital, LLC ultimately made the winning bid of $221,000.

¶ 14    Farah retained Burke to vacate the sheriff's sale. On July 10, 2014, RECG filed its response and objection to Chase's motion to confirm the sale, arguing that because Chase had sold its interest in the property to Fannie Mae prior to the sale, the sale was conducted fraudulently. Additionally, RECG argued that because it had previously appeared to file its affidavit and petition for immediate possession, it was entitled to receive notice of the sale. Because Chase did not send such notice, RECG surmised that the sale should not be confirmed. Additionally, RECG argued that "justice would not be served in confirming [the] sale." RECG also filed its motion to vacate Chase's judgment of foreclosure and sale that was entered on February 27, 2014, essentially mirroring the arguments from its earlier response.

¶ 15    On August 14, 2014, the parties appeared before the foreclosure court for a hearing on RECG's objection and motion to vacate, as well as Chase's motion to confirm the sale. At the conclusion of the hearing, the court denied both RECG's objection and its motion to vacate and granted Chase's motion for an order approving the sale. On September 12, 2014, RECG filed its motion to reconsider. On October 1, 2014, the court denied that motion as well.

¶ 16    On October 22, 2014, the Gooch Firm sent Farah a retainer agreement specifying that the firm would represent RECG in its appeal of the August 14 and October 1, 2014, orders. On October 23, 2014, RECG, through the Gooch Firm, filed its notice of appeal. On September 15, 2015, Fannie Mae, as the plaintiff-appellee, filed a motion to dismiss the appeal, arguing that RECG's failure to obtain a stay of the June 3, 2014, sale rendered the appeal moot, as no remedy existed to reverse the sale. On October 8, 2015, this Court granted the motion to dismiss.

¶ 17    On October 10, 2017, plaintiffs filed their instant malpractice complaint in Lake County (the malpractice court) against defendants. In the complaint, plaintiffs alleged that: (1) after defendants were hired to "resolve" Chase's mortgage on the property, "G[ooch] negligently allowed [the] sheriff's sale on the Chase lien to a third-party purchaser[,] which eliminated all of [RECG's] rights to the property"; and (2) that Gooch also "negligently failed to stay the final judgment of sale during appeal, resulting in dismissal of the appeal in October 2015 as moot because no remedy remained available to reverse the sale to a third-party purchaser." According to plaintiffs, "[w]ithout such negligent failure to stay the judgment during appeal, the appeal was well-grounded and would have succeeded."

¶ 18    On April 25, 2019, defendants moved for summary judgment. In their motion, defendants argued that: (1) plaintiffs' claims regarding the results of the sheriff's sale were time barred by the applicable statute of limitations; (2) plaintiff's claims regarding the results of the sheriff's sale

lacked the requisite showing of proximate causation; (3) the failure to stay the appeal was not the proximate cause of defendants' injuries; and (4) Farah lacked standing and any cognizable injury to pursue a claim against defendants. On May 6, 2019, plaintiffs filed their response to defendants' summary judgment motion. On May 23, 2019, plaintiffs filed their cross-motion for partial summary judgment.

¶ 19    On July 17, 2019, the malpractice court held its hearing on the parties' cross-motions for summary judgment. As a preliminary matter, the malpractice court noted that "both parties agree that *** Farah is not a proper plaintiff in the case" and consequently found that "[d]efendants are entitled to summary judgment as to *** Farah as to the entire complaint."

¶ 20    Next, the malpractice court agreed with defendants that even though defendants should have advised plaintiffs to appear at the June 3, 2014, auction to place a bid on the Chase lien, any resulting malpractice action for failing to do so was barred by the applicable statute of limitations:

> "Certainly in this case, the [p]laintiffs knew shortly after June 3rd[,] at the latest[,] that they had lost the property by failing to appear or bid at the June 3rd sale. The [p]laintiffs claim they *** failed to appear to bid because of advice by the [d]efendants, and they certainly knew at the latest when [the foreclosure court] denied RECG's motions to vacate in response to the approval of the sale on August 14th that they had lost the property and that they had suffered some injury.

> At the absolute latest, [p]laintiffs knew no later than [the foreclosure court's] denial of the post August 14th petition for reconsideration that occurred on October 1, 2014.

> *** That was well over three years and four months before the [p]laintiffs filed the instant lawsuit."

Although the malpractice court recognized plaintiffs' arguments that the two-year statute of

limitations was tolled by defendants' fraudulent concealment "of the cause of action," the court rejected this notion, as it "found no evidence of fraudulent concealment by the [d]efendants." The court similarly concluded that the doctrine of equitable estoppel did not toll the applicable statute of limitations.

¶ 21    The malpractice court also suggested that plaintiffs' failure to appear at the sheriff's sale "was a result of [their] own conduct or negligence. Specifically, the court noted that plaintiffs "failed to review the *** Chase *lis pendens* and then compounded [their] problems by not taking any action after his purchase and approval of [the] sale in *** November of 2013."

¶ 22    Next, the malpractice court rejected plaintiffs' claims regarding defendants' failure to request a stay pending the appeal. In doing so, the malpractice court agreed with defendants that the failure to request the stay was not the proximate cause of plaintiffs' injuries, because even if the stay had been properly requested, the pending appeal would have been unsuccessful. Furthermore, because RECG's petition for immediate possession had been filed by Farah, a nonattorney, the malpractice court found that the petition was a nullity, and therefore did not constitute a proper appearance entitling RECG to receive notice of the sale.

¶ 23    The malpractice court next found that plaintiffs' arguments concerning Chase's assignment to Fannie Mae were "raised too late after the sale and after the filing of a motion to confirm the sale." Accordingly, the malpractice court found that the foreclosure court "was correct in [its] August 14 decision denying the motion to vacate and approving the June 3[] sale." For all of these reasons, the malpractice court found that defendants' alleged negligence "in failing to request a stay of the sale [was] not the proximate cause of the [p]laintiffs' damages." The court granted defendants' motion for summary judgment and denied plaintiffs' cross-motion for summary judgment. On August 16, 2019, plaintiffs filed their motion to reconsider, which the malpractice

court denied on October 30, 2019. Plaintiffs timely appealed.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, plaintiffs bring forth two main arguments. First, reasoning that their appeal of the foreclosure court's rulings would have been successful but for defendants' failure to stay the June 3, 2014, sale, plaintiffs argue that the malpractice court incorrectly found that defendants' negligence was not the proximate cause of plaintiffs' damages. Second, plaintiffs argue that the trial court erred in finding that their remaining claims against defendants were time-barred. We examine these arguments in turn.

¶ 26                               A. Proximate Causation

¶ 27    First, because the malpractice court correctly found that plaintiffs'' appeal of the foreclosure court's August 14 and October 1, 2014, orders would not have been successful even had defendants stayed the sale, plaintiffs have failed to show that defendants' alleged negligence was the proximate cause of their perceived damages.

¶ 28    "Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law." *Republic Bancorp Co. v. Beard*, 2018 IL App (2d) 170350, ¶ 17. When filing cross-motions for summary judgment, the parties suggest that no genuine issues of material fact exist, but instead, that only questions of law remain to be resolved. *Id.* Our review of the disposition of a motion for summary judgment is *de novo*. *Id.*

¶ 29    "To prevail on a legal malpractice claim, the plaintiff client must plead and prove (1) that the defendant attorney owed the plaintiff client a duty of due care arising from the attorney-client relationship, (2) that the defendant attorney breached that duty, and (3) that as a proximate result,

the plaintiff client suffered injury. *Warnock v. Karm Winand & Patterson*, 376 Ill. App. 3d 364, 368 (2007). "To satisfy the proximate cause aspect of a malpractice action, the plaintiff must essentially plead and prove a 'case within a case,' meaning that the malpractice complaint is dependent on the underlying lawsuit. *Fabricare Equipment Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill. App. 3d 784, 788, (2002). Specifically, in establishing proximate causation, a plaintiff must show that, but for the attorney's negligence, plaintiff would have succeeded in the underlying action. *Id.* Therefore, in order for plaintiffs to prevail, they must first establish that their appeal of the foreclosure court's orders would have been successful if defendants had stayed the sale. Accordingly, we consider the merits of the underlying appeal.

¶ 30    Plaintiffs describe three perceived errors with the foreclosure court's August 14 and October 1, 2014, rulings. First, plaintiffs argue that the foreclosure court erred in finding that RECG was not entitled to notice of the sale pursuant to the Illinois Mortgage Foreclosure Law (the Act) (735 ILCS 5/15-1101 *et seq.* (West 2014). Second, plaintiffs argue that the sale should have been set aside because the denial of such notice resulted in a deprivation of RECG's due process rights. Third, plaintiffs contend that the sale should have been set aside because "justice was not done" by the foreclosure court's confirmation of the sale.

¶ 31                                        1. Notice under the Act

¶ 32    First, because RECG did not file a proper appearance in the underlying foreclosure proceedings, the foreclosure court correctly found that RECG was not entitled to receive notice of the June 3, 2014 sheriff's sale.

¶ 33    Pursuant to the Act, a mortgagee "shall *** give notice [of a foreclosure sale] to all parties in the action who have appeared and have not theretofore been found by the court to be in default for failure to plead." 735 ILCS 5/15-1507(c)(3) (West 2014). "If any sale is held without [proper

notice first being given], any party entitled to the notice \*\*\* who was not so notified may, by motion supported by affidavit made prior to confirmation of such sale, ask the court which entered the judgment to set aside the sale." 735 ILCS 5/15-1508(c) (West 2014). A court should not confirm a sale where "notice required in accordance with \*\*\* subsection 15-1507 was not given." 735 ILCS 5/15-1508(b) (West 2014).

¶ 34    Here, the record does not indicate that RECG filed an appearance in the proceedings before the foreclosure court. As such, the foreclosure court correctly found that RECG was not entitled to notice of the June 3, 2014, sale pursuant to the Act. Nonetheless, plaintiffs argue that their November 15, 2013, petition for immediate possession constituted an appearance:

> "Under both Supreme Court Rules 181(a) and (b), the plaintiff's [*sic*] filed, presented, and granted [p]etition constituted an appearance under Illinois law. Rule 181(a) states that a party 'may make his or her appearance by filing a motion.' Rule 181(b) states that an appearance may be made 'by filing a written appearance, answer, or motion, in person or by attorney.' "

¶ 35    Plainly put, plaintiffs' reliance on Rules 181(a) and (b) are misleading, as plaintiffs' citations contain cherry-picked language belying the rules' inapplicability to the matter at hand. A fuller reading of Rule 181(a) provides that:

> "When the summons requires appearance within 30 days after service, exclusive of the day of service \*\*\*, the 30-day period shall be computed from the day the copy of the summons is left with the person designated by law and not from the day a copy is mailed, in case mailing is also required. The defendant may make his or her appearance by filing a motion *within the 30-day period*, in which instance an answer or another

appropriate motion shall be filed within the time the court directs in the order disposing of the motion." (Emphasis added.) Ill. S. Ct. R. 181(a) (eff. Feb. 10, 2006).

According to the plain language of this rule, in order for a motion to qualify as an appearance, such a motion must be filed within the 30-day period from the date of service of the summons. Here, plaintiffs have not provided that their petition conformed with this language. Indeed, plaintiffs make no reference to the instant summons whatsoever, nor were we able to uncover the summons in the record.

¶ 36 Similarly, a more complete reading of Rule 181(b)(1) provides:

"*Actions for Money.* Unless the 'Notice to Defendant' *** provides otherwise, an appearance in a civil action for money *in which the summons requires appearance on a specified day* may be made by appearing in person or by attorney at the time and place specified in the summons and making the appearance known to the court, *or before the time specified for appearance by filing a written appearance, answer, or motion, in person or by attorney*. (Emphasis added.) Ill. S. Ct. R. 181(b)(1) (eff. Feb. 10, 2006).

Pursuant to this language, for a motion to be treated as an appearance, the motion must be filed "before the time specified for appearance," as provided in a summons. *Id.* Again, here, plaintiffs have not invoked the applicable summons to establish conformity with this rule. Furthermore, a full reading of this subsection specifies that Rule 181(b)(1) only applies to "[a]ctions for [m]oney," yet plaintiffs have not provided any authority suggesting that the underlying foreclosure proceedings qualified as such an action. Therefore, plaintiffs have not established any authority suggesting that either Rule 181(a) or (b)(1) requires their petition for immediate possession to be treated as an appearance. For this reason, we reject plaintiffs' contentions as to this point.

¶ 37 Alternatively, plaintiffs cite *Difantis v. Martin*-Trigona, 73 Ill. App. 3d 352, 354-55 (1979) for the proposition that "any action taken by [a] litigant which recognizes the case as in court will amount to a general appearance[,] unless such action was for the sole purpose of objecting to jurisdiction." Relying on *Difantis,* plaintiffs suggest that the petition for immediate possession, which was an action taken by RECG that recognized the case in court, constituted a general appearance. However, even if we were to accept this line of logic, the foreclosure court correctly found that such an appearance would be a nullity as a result of Farah's status as a non-attorney.

¶ 38 Our supreme court has unanimously agreed that corporations must be represented by counsel in legal proceedings. *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 22. Pursuant to the nullity rule, when a nonattorney attempts to represent another party in a legal proceeding, any actions taken by the nonattorney should be treated as a nullity. *Applebaum v. Rush University Medical Center.*, 231 Ill. 2d 429, 435 (2008). However, "[a]lthough the nullity rule is well established in our courts, because the results of its application are harsh[,] it should be invoked only where it fulfills its purposes of protecting both the public and the integrity of the court system from the actions of the unlicensed, and where no other alternative remedy is possible." *Id.*

¶ 39 In recent years, some courts have "take[n] the approach that actions by [nonattorneys] on behalf of a corporation are curable defects, allowing the corporation a reasonable time to obtain counsel and make any necessary amendments." *Downtown Disposal*, 2012 IL 112040, ¶ 23. With this in mind, our supreme court has found that a *per se* nullity rule is unreasonable. *Id.* Instead, courts "should consider the circumstances of the case and the facts before it" before determining whether the nullity rule applies. *Id.* ¶ 31.

"The circuit court should consider, *inter alia*¸ whether the nonattorney's conduct is done without knowledge that the action was improper, whether the corporation acted diligently in correcting the mistake by obtaining counsel, whether the nonattorney's participation is minimal, and whether the participation results in prejudice to the opposing party." *Id.*

Still, "[a] circuit court may properly dismiss an action where the nonlawyer's participation on behalf of the corporation is substantial, *or the corporation does not take prompt action to correct the defect.*" (Emphasis added.) *Id.*

¶ 40    Plaintiffs argue that RECG's petition for immediate possession was not a nullity. In considering the facts and circumstances in this case, we agree with plaintiffs that Farah's participation in the foreclosure proceedings was minimal, and that the opposing party in the foreclosure proceedings—Chase—was not prejudiced in the underlying proceedings by Farah's nonattorney status. Accordingly, these considerations do suggest that the petition may not have been a nullity.

¶ 41    However, we disagree with plaintiffs' assertions that, because "the foreclosure court here invited and welcomed plaintiff's *pro se* filing," Farah could not have known that his petition was improper. While plaintiffs are correct that the trial court *did* grant RECG's petition for immediate possession, our review of the record gives no indication that the foreclosure court was aware of Farah's nonattorney status while doing so.[4] Indeed, plaintiffs have failed to include the report of proceedings from November 15, 2013, in the record, as required to support such an inference.

---

[4] We note that the petition for immediate possession did include a checked box, indicating that it was filed by a *pro se* party. However, there is no indication in the instant record that the foreclosure court saw this notation.

Consequently, we cannot find that the foreclosure court's grant of RECG's petition convinced Farah that the petition was proper, which would otherwise support plaintiffs' claims that the petition was not a nullity.

¶ 42    Regardless, because RECG showed no diligence whatsoever to correct Farah's improper filing, the foreclosure court correctly concluded that the petition was null and void. Again, "[a] circuit court may properly dismiss an action where the nonlawyer's participation on behalf of the corporation is substantial, *or the corporation does not take prompt action to correct the defect.*" (Emphasis added.) *Id.* Here, Farah improperly filed the petition for immediate possession on November 15, 2013. However, the record indicates that this error was never corrected, as the petition was never amended to include the signature of competent counsel. Furthermore, as defendants point out, no counsel appeared on RECG's behalf in the matter until July 10, 2014, almost seven months after the petition for immediate possession was filed, and after the sale had already been completed.

¶ 43    While plaintiffs argue that the "case against nullity here is stronger than the facts in *Downtown Disposal*," we disagree. There, a nonattorney filed several complaints on behalf of the plaintiff corporation. *Id.* ¶ 5. While our supreme court found that the complaints should not be treated as nullities, there, the plaintiff corporation subsequently hired a licensed attorney who sought to amend the improper complaints to cure any resulting defects. *Id.* ¶ 6. Here, on the other hand, plaintiffs never acted to cure the improper petition for immediate possession.

¶ 44    Plaintiffs also cite *Holloway v. Chicago Heart & Vascular Consultants, Ltd.*, 2017 IL App (1st) 160315, in support of their argument. That case is also distinguishable. There, a nonattorney sought to represent her deceased husband's estate in a wrongful death action. *Id.* ¶ 1. After the trial court dismissed a *pro se* complaint that she had filed on behalf of the estate, the wife appealed

the matter. *Id.* In finding that the nullity rule did not nullify the complaint, the court noted that the decedent's wife "demonstrated diligence and persistent efforts to secure legal counsel." *Id.* ¶ 27. Here, in a stark contradiction to the plaintiff in *Holloway*, RECG showed no diligence whatsoever to cure Farah's improper petition and only hired counsel towards the culmination of the underlying proceedings, after the sale had already been completed.

¶ 45     In *Rohr Burg Motors, Inc. v. Kulbarsh*, 2014 IL App (1st) 131664, ¶ 13, which plaintiffs also cite for support, a nonattorney filed a complaint on behalf of the plaintiff car dealership, arguing that the defendant had "wrongfully retained" a vehicle. Eventually, though, the plaintiff retained competent counsel, who continued to represent the plaintiff throughout the remaining proceedings. *Id.* ¶ 43. On appeal, the defendant argued that since the initial complaint had been filed by a nonattorney, "the complaint and all subsequent orders of the trial court must be deemed void." *Id.* ¶ 38. The appellate court disagreed. *Id.* ¶ 42. In doing so, the court reasoned that the plaintiff acted diligently " 'in correcting the mistake by obtaining counsel,' " less than two months after the [defective] complaint had been filed. *Id.* ¶ 43 (citing *Downtown Disposal*, 2012 IL 112040, ¶ 31). Here, again, RECG did not retain counsel to appear in the foreclosure matter until seven months after its improper petition had been filed, and after the sale was already conducted. From these facts, it is clear that RECG showed no diligence whatsoever to correct its mistake, meaning the foreclosure court properly found that RECG's petition for immediate possession was null and void.[5]

---

[5] Plaintiffs also rely on *Brown & Kerr, Inc. v. American Stores Properties*, 306 Ill. App. 3d 1023 (1999) in arguing against the application of the nullity rule. However, *Brown & Kerr* is wholly irrelevant, as it did not involve a nonattorney's improper legal representation of another

¶ 46    In their reply, plaintiffs additionally suggest that because RECG had no basis to know that a mistake had been made by Farah's improper filing, it cannot be said that it lacked diligence in correcting the error. Again, plaintiffs point to the foreclosure court's "acquiescence" of the petition in support for this argument. However, as we have already provided, there is no indication that the court knew of Farah's nonattorney status when granting RECG's petition. Furthermore, on May 22, 2014, after plaintiffs learned that Chase failed to send RECG notice of the sale, RECG was on notice that some defect in its earlier petition may have precluded it from receiving notice. A diligent inquiry would then have revealed the impropriety of the petition. Nonetheless, RECG did not hire counsel to investigate the issue and only retained Burke after the sale was completed. Resultingly, the foreclosure court correctly applied the nullity rule and plaintiffs have failed to establish that RECG was entitled to notice of the sale.

¶ 47                                    2. Due Process

¶ 48    Next, plaintiffs argue that even if RECG's petition for immediate possession was a nullity, "[RECG] would have still been entitled to due process notice protection for the property." Otherwise put, plaintiffs reason that, because they owned the property after having won the October 29, 2013, auction, their due process rights were violated when Chase failed to send them notice of the June 3, 2014, sale, irrespective of sections 15-1507 and 15-1508 of the Act. We disagree.

¶ 49    The due process clause of the fourteenth amendment provides that "[n]o State *** shall deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV. "Procedural due process claims concern the constitutionality of the specific procedures

_____

party. *Id.* at 1029.

employed to deny a person's life, liberty, or property interest." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 244 (2006). "The requirement of due process is met by having an orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights." *Id.*

¶ 50     Here, plaintiffs argue that the principles of due process required RECG "to notice and [the right] to be heard regarding the Chase motion for foreclosure and [the] sheriff['s] sale." However, even accepting that the fundamentals of due process did entitle RECG to such notice, plaintiffs received both constructive notice and actual notice of the underlying foreclosure proceedings, which necessarily included the motion for foreclosure and the sheriff's sale.

¶ 51     Pursuant to the *lis pendens* doctrine, "anyone who purchase[s] or otherwise acquire[s] an interest in property involved in litigation [takes] such interest subject to the outcome of the litigation as if he had been a party thereto from the outset." *Admiral Builders Corp. v. Robert Hall Village*, 101 Ill. App. 3d 132, 135-36 (1981). Consequently, a *lis pendens* notice serves to notify persons that a specific property is involved in litigation. *Lake County Grading Co., LLC v. Forever Construction Co., Inc.*, 2017 IL App (2d) 160359, ¶ 53. At common law, the mere existence of a pending suit bound purchasers or encumbrancers of a property to the results of that suit, regardless of notice. *Id.* ¶ 54. However, after the legislature codified the *lis pendens* doctrine, subsequent purchasers or encumbrancers of a property were not bound by the result of pending suits unless they first had constructive notice of the proceedings. *Id.* *Id.* ¶ 55. For there to be constructive notice, a *lis pendens* notice must first have been filed in the recorder's office. *Id.*

¶ 52     Here, the record indicates that Chase filed a *lis pendens* notice that was recorded in May 2012, more than a year before RECG purchased the property. As such, RECG had constructive notice of the pending foreclosure proceedings—including Chase's motion for foreclosure and the

sheriff's sale—refuting plaintiffs' allegations of a due process violation. Consequently, pursuant to the *lis pendens* doctrine, RECG is bound by the foreclosure court's orders. *Admiral Builders Corp.*, 101 Ill. App. 3d at 135-36.

¶ 53    Additionally, the record also establishes that plaintiffs had actual notice of the June 3, 2014, sheriff's sale. It is uncontroverted that on May 22, 2014, Driggers faxed plaintiffs a copy of Chase's notice of the sale. Plaintiffs do not deny that Farah saw the fax. Indeed, the record shows that Farah subsequently discussed the upcoming sale with defendants, revealing his knowledge of the upcoming auction. Because plaintiffs therefore had actual notice of the sheriff's sale, they cannot now claim that their due process rights were violated by Chase's failure to send them notice. Furthermore, because plaintiffs were given an opportunity to argue against confirmation of the sale at the August 14, 2014, hearing, they similarly cannot claim that they were deprived of a meaningful opportunity to be heard prior to the sale's confirmation. For all of these reasons, plaintiffs' due process argument necessarily fails.

¶ 54                                    3. Interests of Justice

¶ 55    Plaintiffs next argue that this court would not have affirmed the sale because "justice was not done." Once again, we disagree.

¶ 56    Pursuant to section 5-1508(b)(iv) of the Act, a sale may be set aside where "justice was not otherwise done." 735 ILCS 5/15-1508(b)(iv) (West 2014). While the Act does not specify what types of circumstances would constitute an injustice worthy of setting aside a sale, our supreme court has found that this section "appears to merely codify the long-standing discretion of the courts of equity to refuse to confirm a judicial sale." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 19. Pursuant to our supreme court, to establish such an injustice, one must show:

"that justice was not otherwise done because either the lender, through fraud or misrepresentation, prevented the borrower from raising his meritorious defenses to the complaint at an earlier time in the proceedings, or the borrower has equitable defenses that reveal he was otherwise prevented from protecting his property interests. [However, a]fter a motion to confirm the sale has been filed, it is not sufficient under section 15–1508(b)(iv) to merely raise a meritorious defense to the complaint. " *Id.* ¶ 26.

A party relying on this section of the Act must show that the injustice was great enough to outweigh the need of establishing stability in the foreclosure sale process. *Deutsche Bank National Trust Co. v. Cortez*, 2020 IL App (1st) 192234, ¶ 25. "[B]are allegations are insufficient to unravel a judicial sale." *Deutsche Bank National Trust v. Cichosz*, 2014 IL App (1st) 131387, ¶ 16. Furthermore, courts should not unravel a sale under this section of the Act where the complained-upon error was a result of the aggrieved party's own negligence. *Bayview Loan Servicing, LLC v. 2010 Real Estate Foreclosure, LLC*, 2013 IL App (1st) 120711, ¶ 40. Overall, when considering whether justice was otherwise done as the result of a sale, courts should consider "the nature, procedural posture, and the facts and circumstances of [a] case." *McCluskey*, 2013 IL 115469, ¶ 23.

¶ 57    Plaintiffs first argue that the lack of notice as to the June 3, 2014, sale resulted in an injustice. However, as we've already explained, RECG was not entitled to notice of the sale under section 5-1507 of the Act. Furthermore, RECG had constructive and actual notice of the sale. For these reasons, we do not find that any injustice resulted from Chase's failure to specifically notify RECG of the June 3, 2014, sale.

¶ 58    Plaintiffs next argue that another "irregularity and fraud here is that the [f]oreclosure [j]udgment [o]rder setting forth the sale conditions stated the wrong current owner of the

[p]roperty instead of plaintiff." Plaintiffs argue that such an error warranted vacation of the sale. We disagree.

¶ 59    While it is true that Chase's foreclosure judgment erroneously listed the property's owner as being Marcia Roubek, we do not believe that such an error was an injustice "great enough to outweigh the need of establishing stability in the foreclosure sale process." *Cortez*, 2020 IL App (1st) 192234, ¶ 25. Again, pursuant to *McCluskey*, an injustice is not sufficient to overturn a sale unless "the lender, through fraud or misrepresentation, prevented the borrower from raising his meritorious defenses to the complaint at an earlier time in the proceedings." 2013 IL 115469, ¶ 26. Here, though, there is no indication that plaintiffs' aggrieved-upon error was the result of fraud or misrepresentation as opposed to a scrivener's error. Regardless, even if the error was the product of fraud or misrepresentation, plaintiffs have not argued that the error "prevented [RECG] from raising [its] meritorious defenses to the complaint at an earlier time in the proceedings." *Id.* While plaintiffs argue that this error resulted in Chase's failure to serve RECG with "proper notice of the sale," as we've established above, RECG was not entitled to receive notice under section 5-1507 of the Act. Regardless, RECG did receive actual notice of the sale via Driggers' May 22, 2014, fax. For these reasons, we do not believe that Chase's failure to include RECG on the judgment required the sale to be vacated.

¶ 60    According to plaintiffs, the last "unfairness" resulting from the sale was "the severe lost equity suffered by plaintiff, where it purchased the property for $373,000[,] yet lost all equity to a bid of only $221,000[,] just nine months later." In support of this argument, plaintiffs cite *Merchants Bank v. Roberts*, 292 Ill. App. 3d 925:

"This case is very similar to *Merchants Bank* \*\*\*, where the property there valued at $400,000 '[was] so measurably different from the sale price of $200,000 obtained at the sheriff's sale as to be unconscionable.' " (citing *Merchants Bank*, 292 Ill. App. 3d at 1208.)

¶ 61    This case is entirely distinct from *Merchants Bank*. Unlike the defendants in *Merchants Bank*, plaintiffs are not arguing that the sale price of the subject property was severely undervalued. *Id.* Instead, plaintiffs essentially argue that the sale resulted in an injustice because plaintiffs lost the property, without regard to the property's true valuation. Indeed, plaintiffs provide no evidence whatsoever to support the inference that the property was sold for an inadequate price, such as the property in *Merchants Bank*.

¶ 62    Furthermore, we note that plaintiffs' loss had nothing to do with the integrity of the sale. By contrast, the loss was the result of a series of plaintiffs' unwise decisions. RECG, through Farah, purchased the property before ensuring that a proper title search had been conducted, and failed to consult the *lis pendens* that had already been recorded. Plaintiff compounded upon these mistakes by failing to appear at the June 3, 2014, sheriff's sale to redeem the property. As plaintiffs' losses were the result of their own lack of diligence, the foreclosure court properly rejected plaintiffs' claims that justice was not otherwise done. *Bayview Loan Servicing, LLC v. 2010 Real Estate Foreclosure, LLC*, 2013 IL App (1st) 120711, ¶ 40. For all of these reasons, the malpractice court correctly concluded that defendants' negligence was not the proximate cause of plaintiffs' damages.

¶ 63                                      B. Statute of Limitations

¶ 64    Finally, the malpractice court properly found that plaintiffs' remaining allegations of malpractice—concerning defendants' failures to properly resolve the Chase mortgage—were time barred.

"An action for damages based on tort, contract, or otherwise *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2016).

This statute of limitations incorporates "the discovery rule," "which serves to toll the limitations period to the time when the plaintiff knows or reasonably should know of his or her injury." *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 10. Although "the time in which a party has or should have the requisite knowledge under the discovery rule to maintain a cause of action is ordinarily a question of fact," such a question may still be resolved via summary judgment "if the undisputed facts allow for one conclusion." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 250 (1994).

¶ 65    Here, plaintiffs filed their malpractice complaint on October 10, 2017. Again, their complaint alleged that defendants' negligence in resolving the Chase lien caused them to lose the property after the completion of the June 3, 2014, sheriff's sale. Consequently, for the action to have been timely, plaintiffs must have discovered their injuries no earlier than October 10, 2015. However, as the malpractice court found, plaintiffs should have known of its injuries by June 3, 2014, when it failed to appear at the sheriff's sale and subsequently lost the property to Grandview Capital, LLC. Even if plaintiffs were somehow unaware of the results of the June 3, 2014, sale at that time, they were surely aware that they had lost the property on October 1, 2014, when the foreclosure court denied RECG's motion to reconsider. Because the latest plaintiffs could have discovered their injuries was therefore October 1, 2014, plaintiffs' claims are time-barred.

¶ 66  Nonetheless, plaintiffs argue that the doctrines of fraudulent concealment and equitable estoppel tolled the statute of limitations, rendering plaintiffs' claims timely. In support of this argument, plaintiffs argue that defendants misrepresented material facts by: (1) agreeing to represent plaintiffs in their malpractice action against Garver, despite defendants' knowledge that it was partly responsible for plaintiffs' damages; (2) misrepresenting Garver's liability for plaintiffs' injuries; and (3) failing to disclose that plaintiffs "needed to find other counsel to discuss the issue of *** a potential claim [against defendants]." Essentially, plaintiffs assert that defendants misrepresented their own culpability for plaintiffs' injuries by shifting blame for the loss of the property onto Garver, and that these misrepresentations established fraudulent concealment and call for the application of equitable estoppel.

¶ 67  Resolution of this matter does not require us to consider plaintiffs' arguments of fraudulent concealment or equitable estoppel. Even if—hypothetically speaking—we were to accept plaintiffs' claims that defendants made the above "misrepresentations" to plaintiffs, the foreclosure court's October 1, 2014, judgment clearly established that plaintiffs lost the property to Grandview Capital, LLC, who placed the winning bid at the auction. As such, plaintiffs should have known that defendants' earlier advice not to attend the sale or place a bid had caused plaintiffs' loss. Therefore, despite any misrepresentations that defendants may have theoretically made thereafter, plaintiffs already had actual knowledge of all the material facts necessary to bring forth its malpractice claims. For this reason, the malpractice court correctly concluded that neither fraudulent concealment nor equitable estoppel tolled the applicable statute of limitations, and summary judgment was correctly granted in favor of defendants. *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 545 (1995) (finding that the doctrine of fraudulent concealment does not toll a statute of limitations past the date on which a party obtains actual

knowledge of concealed facts); *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001) (finding that a party claiming equitable estoppel must "not know that [misrepresentations] were untrue when they were made").

¶ 68                                III. CONCLUSION

¶ 69     For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 70     Affirmed.