NOTICE

Decision filed 11/17/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220180-U

NO. 5-22-0180

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE VANDALIA LEVEE AND DRAINAGE DISTRICT, | ) ) ) | Appeal from the Circuit Court of Fayette County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 08-CH-19 |
| FRED KECK; GUARANTEED AIR FREIGHT FORWARDING, INC.; PARISH HOLDINGS, LP; KASKASKIA LAND COMPANY, LLC (formerly known as Keck Land Company, LLC); and PATRICIA EMERICK, as Principal of Kaskaskia Land Company, LLC, | ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Kaskaskia Land Company, LLC (formerly known as Keck Land Company, LLC), and Patricia Emerick, as Principal of Kaskaskia Land Company, LLC, Defendants-Appellees; Emerick Farms, Smart Logistics, Inc., E&E Farms, Inc., Emerick Brothers, Inc., and Peoples National Bank, N.A., Third-Party Citation Respondents-Appellees). | ) ) ) ) ) ) ) ) ) | Honorable Kevin S. Parker, Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court erred in granting turnover of rents, owed to the defendant, to bank rather than plaintiff where the plaintiff had filed its *lis pendens* notice prior to the bank filing its assignment of rents and mortgages.

1

¶ 2    In this interlocutory appeal, the plaintiff, the Vandalia Levee and Drainage District (VLDD), appeals the February 17, 2022, order of the circuit court of Fayette County which, *inter alia*: (1) denied fully and in part several motions VLDD filed for turnover of funds held by multiple parties; (2) granted defendant Kaskaskia Land Company, LLC's (KLC) and Smart Logistics, Inc.'s (Smart) 2-615 motion to dismiss VLDD's motion for turnover directed to Smart; and (3) ordered rents in the possession of third-party respondent, Jacob Smith, and owed to KLC, to be turned over and paid to third-party respondent and intervenor, Peoples National Bank, N.A. (PNB), and credited to the mortgage indebtedness KLC owed PNB. For the following reasons, we find that we lack jurisdiction to determine all the issues which VLDD has raised except for the circuit court's determination to award PNB turnover of rents. Further, we find that the circuit court erred in awarding PNB the rents owed to KLC by Jacob Smith, instead of awarding those rents to VLDD, and we reverse that portion of the order.

¶ 3                                I. FACTS

¶ 4    VLDD filed its original complaint for injunctive relief on April 18, 2008. An amended complaint for injunctive relief was filed on September 30, 2008. The operative complaint, the amended complaint after appeal for injunctive relief and damages, was filed on April 29, 2013. This cause of action has a long history with both the Fourth Judicial Circuit Court of Fayette County and our Fifth District Appellate Court. The background leading to the supplemental proceedings currently at issue is set forth more fully in our many previous dispositions. See *Vandalia Levee & Drainage District v. Keck*, 2012 IL App (5th) 100564-U; *Vandalia Levee & Drainage District v. Keck*, 2015 IL App (5th) 140302-U; *Vandalia Levee & Drainage District v. Keck*, 2020 IL App (5th) 190109-U; *Vandalia Levee & Drainage District v. Keck*, No. 5-19-0406, an appeal filed by plaintiff with a cross-appeal thereafter filed by Kaskaskia Land Company, LLC,

2

dismissed on September 18, 2020, for lack of jurisdiction pursuant to Illinois Supreme Court Rule 23(c)(1) (eff. Apr. 1, 2018); and a related matter *Keck v. Keck Land Co.*, 2013 IL App (5th) 120503-U. However, the majority of those facts are not relevant to the present appeal and are not restated.

¶ 5    The issue of injunctive relief was ruled upon by the trial court on May 22, 2014, with damages being reserved. A bench trial was held on April 22 and 23, 2019, for the determination of damages with the trial court entering its order on August 27, 2019, finding in favor of VLDD, awarding $565,458 to be paid by KLC. Thereafter, VLDD commenced supplemental proceedings to collect the judgment, issuing citations to discover assets to KLC and other third parties believed to have been holding KLC funds.

¶ 6    On February 17, 2022, the trial court issued the order currently being appealed within the supplemental proceedings pursuant to section 2-1402 of the Code of Civil procedure (735 ILCS 5/2-1402 (West 2022)). The order addressed a myriad of issues as stated previously. VLDD filed its notice of appeal on March 17, 2022, appealing "the final Order dated February 17, 2022, and all other orders and docket entries that led to this order." In addition to the February 17, 2022, order, VLDD referenced the following orders for this court's review: orders dated November 16, 2020, January 21, 2021, and June 22, 2021, all of which it claims were orders that "that led to" the February 17, 2022, order.

¶ 7    On April 18, 2023, KLC filed two motions with its response brief, a "Motion to Dismiss Portions of Plaintiff-Appellant the Vandalia Levee and Drainage District's Appeal for Lack of Jurisdiction" and a "Motion to Strike Brief of Appellant the Vandalia Levee and Drainage District" (jointly referred to as First Motion to Strike) filed March 14, 2023. On May 22, 2023, this court ruled on KLC's two motions, both granting and denying in part the First Motion to Strike. See

3

Order of Fifth District Appellate Court entered May 22, 2023 (Order Striking Briefs). This court then granted VLDD "30 days from the date of the entry of this order" to submit a revised brief which was to "focus on the issues remaining and not address those dismissed for lack of jurisdiction" and "shall remove any improper or unnecessary accusations of impropriety *** and *** shall address each issue it raises separately, in turn, and support said arguments for those issues with citations to the record and case law." See Order Striking Brief at page 11. The parties complied with this court's order and refiled their briefs. Additionally, on July 12, 2023, PNB filed another motion to strike (Second Motion to Strike) portions of VLDD's amended brief directed at PNB. We took PNB's motion to strike with the case and discuss it below.

¶ 8 There are numerous facts related to the various claims for turnover against KLC and the third-party respondents, and motions for sanctions. For the sake of brevity and clarity, those additional facts will be set forth as necessary to our resolution of the issues on appeal where relevant below.

¶ 9                                      II. ANALYSIS

¶ 10                         A. PNB's Second Motion to Strike

¶ 11 We first address the second motion to strike. In its motion, PNB argues that VLDD in its amended brief "has now included two new issues not properly before this Court and over which this Court does not have jurisdiction." The first issue PNB argues is that VLDD in its amended brief is now seeking "rents from tenants, other than Jacob Smith, that [KLC] is holding, which rents total $229,075.00." PNB argues that we do not have jurisdiction to consider these rents or award them to VLDD because they were not sought in the trial court prior to initiating this appeal. KLC asserts that it has filed motions following the filing of this appeal, on April 25, 2022, and December 30, 2022, which address these rents. The rents allegedly have been paid into an escrow

4

account. The motions request that the trial court turnover these new rents to PNB in accordance with the trial court's previous ruling that PNB has priority to the Jacob Smith rents over VLDD. However, these turnover motions remain pending, awaiting remand from this court. As such, there has been no formal ruling on them by the trial court. PNB argues that these rents are not properly at issue and this court lacks jurisdiction to review them. We agree.

¶ 12    It is well established that "[a] party may not raise an issue on appeal which was not raised in the trial court." *Moran v. Gust K. Newberg/Dugan & Meyers*, 268 Ill. App. 3d 999, 1004 (1994). "In order to preserve an issue for review, an appellant must first obtain either a ruling on the issue or a refusal to rule thereon from the trial court." *Raintree Homes, Inc. v. Village of Kildeer*, 302 Ill. App. 3d 304, 306 (1999). Thus, as to the issue of new rents, not previously ruled upon by the trial court prior to, or within, its February 17, 2022, order, we do not have jurisdiction to consider those rents and we grant PNB's motion to strike those portions of VLDD's amended brief.

¶ 13    The second issue raised by PNB is that VLDD has requested, as a form of alternative relief in its amended brief, that PNB be required to turn over to VLDD $121,780 "since that is the amount Betsey Emerick removed from the KLC account at PNB after service of the citation in order to make the annual payment to PNB." Again, we agree with PNB that this argument is not ripe for this court's consideration. VLDD also concedes this point in its amended brief. Again, "[a] party may not raise an issue on appeal which was not raised in the trial court." *Moran*, 268 Ill. App. 3d at 1004.

¶ 14    VLDD responds that the request is seeking an alternative form of relief which we may consider. However, the trial court in its February 17, 2022, order found that only $167.46 was held in KLC's checking account at PNB. All that money was awarded to VLDD and PNB was dismissed from the supplemental proceedings. Therefore, we believe the request seeks more than

just an alternate form of relief because it would require us to hold PNB responsible for an alleged violation of a citation order which it did not violate itself. Essentially, VLDD would be asking us to find that PNB must pay some sort of damage award for its failure to prevent Betsey Emerick from transferring money following the service of the citation. PNB's purported liability for these funds constitutes a new issue and would require presentation to the trial court and a ruling prior to this court being conferred with jurisdiction to consider it. VLDD has another claim in this appeal where it challenges the trial court's refusal to issue a rule to show cause and find KLC in contempt for its transfer of the $121,780 by Betsey Emerick following its receipt of the citation to discover assets. That issue still stands, but VLDD cannot now seek to recover the amount from a different party for the first time on appeal. Therefore, we grant the motion to strike portions of VLDD's brief which requests the $121,780 amount allegedly removed improperly by Betsey Emerick be paid by PNB.

¶ 15    The Second Motion to Strike next argues that these two aforementioned issues are the only issues involving PNB in the amended brief. Thus, it asks us to dismiss it from the appeal. We disagree.

¶ 16    PNB argues that "none of the remaining 'Issues Presented for Appeal,' and none of the remaining items under the specific 'Request for Relief,' in VLDD's Amended Brief concern any issues or requests regarding [PNB] or the Jacob Smith Rents." PNB contends that VLDD "did not request in its Amended Brief that the Jacob Smith Rents (the issue that was properly before this Court) be ordered turned over to VLDD rather than to Bank as ordered in the February 17, 2022[,] Order of the trial court."

6

¶ 17     While we agree generally with PNB's contention that VLDD did not specifically request a turnover of the Jacob Smith rents as one of its listed requests for relief, VLDD does request that we

> "4) [f]ind that PNB's mortgages and assignment of rents securing the same are subsequent to [VLDD's *lis pendens*] notice that included an Appellate Judgment and claim of one million dollars in damages such that upon remand the $229,075 in KLC collected rents, held in escrow, be turned over to Plaintiff *where any other rents collected be turned over to [VLDD] until full payment of judgment, interest and costs occurs*." (Emphasis added.)

¶ 18     VLDD in its amended brief clearly challenges the trial court's finding that PNB's mortgage and assignment of rents has priority over its *lis pendens* notice. VLDD spends nearly 10 pages of its amended brief thoroughly articulating its position as to how the trial court erred when it found that PNB had priority over VLDD in relation to the outstanding rents owed to KLC. As VLDD notes in its response, Jacob Smith has refused to comply with the trial court's June 22, 2021, order and place its owed rents into an escrow account. Thus, VLDD does not ask this court to order turnover of the Jacob Smith rents held in escrow to them on remand because the funds are not there to be awarded. Instead, VLDD seeks a finding that the trial court erred in its determination of priority of rights to these rents between VLDD and PNB. Then upon remand, VLDD can seek contempt against Jacob Smith to force him to deposit the funds into the escrow so that it can then be awarded to VLDD. While it would have been simpler if VLDD had specifically requested the award of these particular rents, VLDD did seek "any other rents collected be turned over to Plaintiff until full payment of judgment, interest and costs occurs." This portion of their relief

7

would include the Jacob Smith rents; thus, they have been requested as relief and PNB surely cannot claim any surprise.

¶ 19    The determination of whether VLDD or PNB has superior rights to the rents will ultimately direct the trial court as to what manner it should award all outstanding rents owed to KLC no matter who those rents come from. Therefore, we grant in part, and deny in part, the Second Motion to Strike. The two issues raised by PNB are granted; however, PNB's request to be dismissed from the appeal is denied as the issue of whether the trial court properly found that PNB had superior rights to the rents is properly before us.

¶ 20                                    B. Appellate Jurisdiction

¶ 21    "Appellate courts have a duty to consider, *sua sponte*, whether we have jurisdiction over an appeal and to dismiss the appeal if jurisdiction is lacking." *In re Marriage of Mackin*, 391 Ill. App. 3d 518, 519 (2009). Here, the trial court ended its February 17, 2022, order by stating: "For the purposes of appeal under Supreme Court Rule 304(b)(4), this is a final order in supplemental proceedings." The appellant has brought its appeal pursuant to Illinois Supreme Court Rule 304(b)(4) (eff. Mar. 8, 2016).

¶ 22    "Generally, appellate jurisdiction exists only to review final orders." *D'Agostino v. Lynch*, 382 Ill. App. 3d 639, 641 (2008). "The finality of an order is determined by an examination of the substance as opposed to the form of that order." *Cole v. Hoogendoorn, Talbot, Davids, Godfrey & Milligan*, 325 Ill. App. 3d 1152, 1153 (2001). "Appellate jurisdiction is limited to review of final judgments unless an order falls within a statutory or supreme court exception." *Id*. "An order is said to be final if it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof, such as a claim in a civil case." (Internal quotation marks omitted.) *D'Agostino*, 382 Ill. App. 3d at 641. "Supreme Court Rule 304(a) provides that a trial

8

court can make a final order in a case involving multiple parties and/or multiple claims immediately appealable by entering an express finding that there is no just reason for delaying enforcement or appeal." *Id.* at 642. "However, Rule 304(b) makes certain specific types of final orders that do not dispose of an entire proceeding immediately appealable *without* a special finding." (Emphasis in original.) *Id.* "One of the types of orders that is immediately appealable without a special finding is a final order in a section 2-1402 collection proceeding." *Id.* "An order in a section 2-1402 proceeding is said to be final when the citation petitioner is in a position to collect against the judgment debtor or a third party, or the citation petitioner has been ultimately foreclosed from doing so." *Id.*

¶ 23    Here, there has been no 304(a) finding as to any of the issues brought before us. VLDD only seeks to bring these interlocutory appeals via Illinois Supreme Court Rule 304(b). Thus, in examining the finality of the trial court's order, we must look not to the form of the order or even necessarily to the declaration of finality stated by the trial court, but instead, must look to the substance of the trial court's section 2-1402 ruling as to each respondent and third party to determine whether VLDD has been placed in a position to collect against the party or is foreclosed from collecting against the party.

¶ 24            1. *Turnover Against Emerick Farms and Emerick Brothers*

¶ 25    The first two issues raised by VLDD are whether the trial court erred in failing to issue a turnover order in favor of VLDD against Emerick Farms, Inc., (EF) and Emerick Brothers, Inc., (EB) for certain amounts VLDD alleged was owed by EF and EB to KLC.

¶ 26    In the February 17, 2022, order, the trial court ruled as follows:

> "VLDD's Motion for Turnover filed October 30, 2020, against Emerick
>
> Brothers, Inc. and Emerick Farms, Inc. is denied in part and granted in part.

9

Judgment against the Third-Party Respondents will not enter. They and KLC are however directed to provide the Court and VLDD within (30) days, with the promissory notes, if any and a statement of the current loan balances owed to KLC. If no promissory notes exist, then the parties shall provide a statement of the payment terms relative to the loans. Any and all future payments on the loan indebtedness owed to KLC existing on the date of this order, shall be paid instead to VLDD to be credited to its judgment against KLC. Further, VLDD is granted a force assignment of a chose in action to enforce repayment of the indebtedness, in the event that either loan becomes delinquent or otherwise in default. ***"

¶ 27 The trial court in another portion of its order further explained its ruling stating, "The Court does not have sufficient information on the current status of two loans to determine whether they are current and in good standing or delinquent and in default." It then noted, "Unlike other assets discovered in these voluminous supplemental proceedings, no adverse or superior claims have been asserted and no defenses argued against the turnover of KLC's interest in these two loans."

¶ 28 This is a peculiar ruling because, on its face, the order appears to be final. It clearly was the trial court's intent to award VLDD the ability to collect the alleged monies owed by EF and EB. However, the trial court readily admits that it has insufficient information on the status of the loans, whether they are in good standing or default, whether promissory notes exist for the loans, what the terms are of those notes, etc.[1] As a result of this lack of pertinent information, the trial court essentially reserves its issuance of a judgment until EF, EB, and KLC provide documentation regarding these alleged loans within 30 days of the entry of the February 17, 2022, order.

---

[1]While not at issue here, in the discussion regarding finality and jurisdiction, we do note that we find it interesting the trial court was able to determine that these transferred monies constituted a legal and proper loan without the information it expressly states it lacks.

¶ 29    On appeal, VLDD's purpose for appealing this portion of the order is because it disputes these are valid loans, contends these funds were improperly transferred to escape paying the judgment, and contends that the trial court should have awarded the full amount of these funds immediately payable because there is no way to determine from the terms, or lack thereof, when, if ever, the loans would be considered in default. In other words, VLDD is essentially stating, we have a ruling in our favor, but we are unable to collect on it. The trial court has indicated we have the right to collect, but failed to articulate and rule upon the terms of these alleged loans so that we know how and when to move forward with collection. On that specific issue, we agree.

¶ 30    The trial court by finding in favor of VLDD but requiring the production of further documentation, and not having yet interpreted that documentation, or ruling as to how that documentation affects the loans and terms thereof, has issued a nonfinal order because it does not immediately place VLDD in a position to collect. It further does not ultimately preclude them from collecting. Thus, the order is nonfinal and not appealable. The trial court will need to review the documents it has ordered produced and issue a definitive ruling on the status of the loans, the terms of the loan, and then award assignment or judgment in favor of VLDD for them to be placed in a position to collect; or definitively deny such relief, so that the order can be final.

¶ 31    Thus, because the order requires further action on the part of EF, EB, and KLC before the trial court has the additional required information to determine the loan's terms and can place VLDD in a position to collect, we find this portion of the order to be nonfinal and dismiss the portion of the appeal regarding it for lack of jurisdiction.

¶ 32            2. *Dismissal of Claim Against Smart Logistics, LLC*

¶ 33    The third issue raised by VLDD on appeal is the trial court's dismissal of its claim seeking turnover against Smart Logistics, LLC (Smart). In the February 17, 2022, order, the trial court

11

dismissed this claim pursuant to section 2-615 for failure to state a claim. However, the trial court did so "without prejudice" and VLDD was "granted (28) days to amend its Motion for Turnover directed at Smart Logistics, LLC."

¶ 34    An order dismissing a complaint is not final and thus not appealable unless the language of the order also indicates that the litigation is terminated, and the plaintiff will not be permitted to replead. *Cole*, 325 Ill. App. 3d at 1153. Here, the February 17, 2022, order expressly granted VLDD "(28) days to amend." Even if the time for further pleading after a dismissal of a complaint has run, and the plaintiff has elected to stand on her complaint, the order dismissing the complaint is not a final appealable order until a subsequent order dismissing the suit is entered. *Wick Building Systems, Inc. v. Bunning*, 107 Ill. App. 3d 61, 62-63 (1982). To this court's knowledge, there has been no subsequent order dismissing the claim as to Smart with prejudice. Accordingly, this court lacks jurisdiction over this issue as it is not final and does not "ultimately foreclose" VLDD from collecting as required under Rule 304(b).

¶ 35                                    3. *Award of Rents to PNB*

¶ 36    The fourth issue raised is the trial court's award of $114,450 in outstanding rents owed to KLC by Jacob Smith to PNB instead of to VLDD. We analyzed our jurisdiction on this issue in our Motion Striking Briefs when granting in part and denying in part KLC's and PNB's First Motion to Strike. Ultimately, we find we do have jurisdiction as to this issue.

¶ 37    The February 17, 2022, order clearly awarded the Jacob Smith rents to PNB. Further, in a later portion of the February 17, 2022, order, the trial court awarded the remaining money held by KLC in their PNB checking account to VLDD and states that "the bank [PNB] is discharged from the supplemental proceedings now directed at it." VLDD has therefore been "ultimately

12

foreclosed" from collecting these rents. Thus, this is a final order and we have jurisdiction. The merits of VLDD's appeal as to this issue are addressed below.

¶ 38                    4. *Denials of Contempt Against KLC and Patricia Emerick*

¶ 39    KLC in its First Motion to Strike moved to strike this portion for lack of jurisdiction because it argued that the trial court made an oral Illinois Supreme Court Rule 304(a) finding on January 21, 2021, which was then not timely appealed by VLDD. We addressed that issue in our Motion Strike Briefs and disagreed with KLC's position. We found that the trial court failed to make a proper Rule 304(a) finding during its January 21, 2021, oral pronouncement. Therefore, we held that the denial of civil contempt against KLC at that time was not final, and thus, it was not barred from being raised by VLDD for untimeliness. We went on to explain:

> "Further, we note that the plaintiff-appellant's petition for a finding of indirect civil contempt was brought specifically pursuant to section 2-1402(f)(1) which allows for a finding of civil contempt for a citation respondent's violation of a citation order's restraining provision. 735 ILCS 5/2-1402 (West 2019). Thus, the petition falls within the context of the section 2-1402 supplemental proceedings and its denial becomes appealable following the final resolution of the supplemental proceeding, which here is the February 17, 2022, order. Therefore, we find that we have jurisdiction and deny the motion to dismiss as to this issue."

¶ 40    At that time, this court was under the impression that the February 17, 2022, order would resolve all of the remaining issues in the section 2-1402 supplemental proceedings. However, after further review, and in light of the repleaded and more articulate briefs, we must amend our finding that the February 17, 2022, order is "the final resolution of the supplemental proceeding" and that "we have jurisdiction *** as to this issue." Based upon our previous findings in this disposition,

13

certain portions of the February 17, 2022, order are not final, and thus, the February 17, 2022, order will not be the final resolution or end to the supplemental proceedings.

¶ 41    As a result, we now look to the law regarding jurisdiction of an appellate court to review denials of contempt. "[T]he rule, which this court has consistently held, is that only a contempt *judgment that imposes a sanction* is a final, appealable order." (Emphasis in original.) *In re Marriage of Gutman*, 232 Ill. 2d 145, 152 (2008). "Moreover, Supreme Court Rule 304(b)(5) provides that '[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty' is appealable without a Rule 304(a) finding." *Id*. at 153. "It is clear from the language of the rule that only contempt judgments that impose a penalty are final, appealable orders." *Id*. "Until the entry of a contempt order imposing a sanction, a contempt petition provides no basis for obtaining immediate appellate jurisdiction over any part of the case under Rule 304(b)(5)." *Id.* Thus, "[a] party aggrieved by denial of a petition for a rule to show cause in a contempt proceeding may immediately appeal the denial only if the court expressly finds no just reason to delay appeal from the order." *In re Marriage of Carrillo*, 372 Ill. App. 3d 803, 813 (2007). Here, no such finding has been made as we explained in our Motion Striking Briefs.

¶ 42    Therefore, because a denial of contempt only becomes appealable once all claims have been resolved in the action, until the trial court resolves all the remaining issues or until a proper Rule 304(a) finding is issued, the denial of contempt is not a final and appealable order. As a result, we lack jurisdiction to consider this issue.

¶ 43    5. *Denial of VLDD's Motion to Order Full Payment Against Patricia Emerick*

¶ 44    In this final issue, VLDD contends that it presented sufficient evidence so that the standard was met to pierce the corporate veil of KLC so that the trial court should have ordered Patricia Emerick to pay the full judgment personally. Unfortunately, for VLDD, this court has previously

14

ruled on this issue in our Motion Striking Briefs. We granted KLC's motion to strike as to this issue and VLDD has re-raised this issue in direct violation of that order. Despite the utter indifference by VLDD to this court's previous ruling, we will again explain why this issue is not properly before us.

¶ 45 The trial court dismissed both the Estate of Tim Emerick and Patricia Emerick, in their personal capacities, in its November 16, 2020, order, specifically addressing the argument that VLDD again raises wherein it contends it has pierced the corporate veil. That order was immediately appealable without a Rule 304(a) finding pursuant to Rule 304(b)(4) following its entry by the trial court because it "ultimately foreclosed" VLDD from collecting against the Estate of Tim Emerick and Patricia Emerick, personally. VLDD failed to appeal the November 16, 2020, order within the required 30 days. Therefore, we lack jurisdiction because the time has lapsed for the filing of an appeal regarding the November 16, 2020, order.

¶ 46 C. Whether the Trial Court Erred in Granting Turnover of Rents to PNB

¶ 47 We now address the only issue properly before this court, whether the trial court properly found that PNB held the superior right to Jacob Smith's outstanding rents owed to KLC over the right held by VLDD following its filing of a *lis pendens* notice.

¶ 48 The facts concerning this issue are not disputed. VLDD filed on June 20, 2014, a *lis pendens* notice regarding the KLC property which referenced and attached this court's decision in *Vandalia Levee & Drainage District v. Keck*, 2012 IL App (5th) 100564-U, and indicated that a "Request for damages of well over $1 million is still pending." This notice predates all recordings regarding the KLC property filed by PNB. PNB does not allege or challenge that the *lis pendens* notice was improper or defective in any manner.

¶ 49      KLC executed two promissory notes in favor of PNB both dated January 26, 2015, in the initial amounts of $350,000 and $2 million. The combined amounts owed on those loans at the time of the trial court's February 17, 2022, order was approximated to be $1,193,379.74.[2] The mortgages contained assignment of rents provisions for those loans and were recorded the same day they were entered, January 26, 2015.

¶ 50      The judgment award of $565,458 was issued by the trial court following trial in favor of VLDD and against KLC on August 27, 2019. Following that judgment, VLDD initiated section 2-1402 supplemental proceedings to collect. VLDD issued a third-party citation to discover assets to PNB which PNB answered on July 22, 2020. PNB then declared an event of technical default on the KLC mortgages and filed a complaint to foreclose against KLC in Fayette County case 2020-CH-20. On October 20, 2020, PNB filed a motion to intervene in the supplemental proceedings to discover assets directed to third party, Jacob Smith, and third party, Mud Lake, LLC.[3] PNB attached copies of the KLC mortgages and rent assignments securing those mortgages to its motions to intervene and the trial court granted PNB's motion.

¶ 51      Jacob Smith had previously rented land from KLC. It is not disputed that he owes $114,450 to KLC which the trial court ordered placed in escrow on June 22, 2021, pending its resolution of this issue. At the trial court level, both PNB and VLDD claimed superior right to these rents and sought turnover of those funds.

¶ 52      In its February 17, 2022, order, the trial court found in favor of PNB, declaring it had superior rights and could collect the outstanding rents owed to KLC for payment on the amounts

---

[2]VLDD does dispute the accuracy of the amount of these loans and their outstanding balances; however, these exact amounts are not determinative, nor necessarily germane, to our disposition of the issue.
        [3]The trial court's February 17, 2022, ruling regarding Mud Lake, LLC has not been appealed by VLDD and thus will not be discussed.

owed under the mortgages. Specifically, the trial court found that "[i]n this lien priority dispute, the Court concludes that the Assignment of Rents controls not the *Lis Pendens* Notice. Therefore, with respect to the farm rents owed to KLC by Jacob Smith, [PNB]'s claim as an assignee of rents, is superior to VLDD's claim as a judgment creditor in these supplemental proceedings."

¶ 53   On appeal, VLDD appeals that decision and contends that as a judgment creditor, its claim to the rents is superior to PNB's because of its recording of *lis pendens* notice prior to the recording of the mortgages and assignment of rents. Thus, the question before us is simply whether a *lis pendens* notice retains superior rights to an assignment of rents subsequently recorded when the final judgment entered occurs after the recording of both. We find that it does.

¶ 54   First, PNB relies upon *BMO Harris Bank N.A. v. Joe Contarino, Inc*., 2017 IL App (2d) 160371, to support its contention that section 31.5 "Assignment of rents; perfection" of the Conveyances Act (765 ILCS 5/31.5(b) (West 2022)) controls and gives them superior rights. However, the issue reviewed and answered in *BMO* differs from the present issue at hand.

¶ 55   In *BMO*, the appellate court addressed whether a forbearance agreement between a landlord, a third-party collection agency, and bank/mortgagee was an enforceable contract modification predating BMO's judgment and the initiation of supplemental proceedings such that it removed the rents from the landlord/debtor's possession or control. *BMO Harris Bank N.A.*, 2017 IL App (2d) 160371, ¶¶ 14, 53. Under the forbearance agreement, the collection agency was contractually obligated to transmit rents from landlord's properties directly to bank/mortgagee in order to bring the delinquent mortgage back current. *Id*. ¶ 14. Under this forbearance contract the bank/mortgagee forewent its right to foreclose or pursue receivership. *Id*. Further, the contract prevented landlord from its right to receive any rents on the properties implicated by the mortgages. *Id*. Thus, the true issue decided in *BMO* was whether a judgment creditor had superior rights to

17

rents where they *did not* file a *lis pendens* notice, the bank/mortgagee had perfected its lien and already found the landlord in default. Bank/mortgagee then began enforcing its assignment of rents by entering into a forbearance agreement which required the direct payments of rents to the bank/mortgagee instead of the landlord. And all this was done *prior* to the judgment being entered, the initiation of supplemental proceedings, or the issuance of citations. The *BMO* court ultimately found: "Through the forbearance agreements, which predated the [collection agency] citation, [bank/mortgagee] enforced the recorded/perfected assignment-of-rents provisions in their mortgages and, thus, the rents were no longer in [landlord's], the debtor's, possession or control." *Id*. ¶ 53. Thus, *BMO* did not address the issue of how a *lis pendens* notice interacts with a mortgage/assignment of rents lien; but instead, merely found that under the above circumstances, where no *lis pendens* had been recorded and the landlord/debtor had previously signed away its right to the rents, the funds were not in landlord/debtor's possession so that the funds could be taken from him in a supplemental proceeding.

¶ 56    Here, we have a different situation. We have a *lis pendens* recording that gave constructive notice of the lawsuit *prior* to the mortgage/assignment of rents being recorded and perfected. We also have no action taken by the mortgagee to enforce any rights or find any default prior to its intervention in the supplemental proceedings. As a result, we now turn to the language of the relevant statutes and relevant Illinois case law.

¶ 57    Section 2-1901 of the Code of Civil Procedure, *lis pendens*, states as follows:

"Except as otherwise provided in Section 15-1503, every condemnation proceeding, proceeding to sell real estate of decedent to pay debts, or other action seeking equitable relief, affecting or involving real property shall, from the time of the filing in the office of the recorder in the county where the real estate is located,

18

of a notice signed by any party to the action or his attorney of record or attorney in fact, on his or her behalf, setting forth the title of the action, the parties to it, the court where it was brought and a description of the real estate, be *constructive notice to every person subsequently acquiring an interest in or a lien on the property affected thereby, and every such person and every person acquiring an interest or lien as above stated, not in possession of the property **and whose interest or lien is not shown of record at the time of filing such notice**, shall, for the purposes of this Section, be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he or she were a party thereto.*" (Emphasis added.) 735 ILCS 5/2-1901 (West 2022).

¶ 58    By the plain language of this section constructive notice is given to any "subsequent purchaser" of the property if they are not in possession of the property and his or her "lien is not shown of record at the time of the filing of such notice." This notice then binds that "subsequent purchaser" to "the proceedings to the same extent and in the same manner as if he or she were a party thereto." Thus, based upon the plain language of the statute, here, PNB is a subsequent purchaser based upon its status as a mortgagee following the filing of the *lis pendens* notice and PNB is bound by any subsequent result that would occur in the litigation. Thus, based upon a plain reading of this statute, PNB's acquired interest in the property, an assignment of rents via mortgage, is inferior to and subsequent to VLDD's judgment received from the pending litigation of which the *lis pendens* gave PNB notice.

¶ 59    However, PNB contends that the trial court was correct that section 31.5(b) of the Conveyances Act, assignment of rents, controls this issue, not the *lis pendens* statute. That portion of the statute states as follows:

19

"(b) If an instrument assigning the interest of the assignor in rents arising from the real property described in the instrument is recorded, pursuant to this Act, in the county in which the real property is situated, then the interest of the assignee in those rents is perfected upon that recordation without the assignee taking any other affirmative action.

The recordation is *constructive notice to **subsequent purchasers**, creditors, and third parties* of the content and effect of the assignment with the same force and effect as any other duly recorded instrument or conveyance of an interest in real property under Sections 30 and 31 of this Act. *From the time of the recordation, the assignee has a superior claim to the rents that are subjected to the assignment, as against all parties whose claims or interests **arise or are perfected thereafter**.*"

(Emphases added.) 765 ILCS 5/31.5(b) (West 2022).

¶ 60 We do not see how a plain reading of this language supports PNB's contention. The statute clearly states the recording of a mortgage/assignment of rents gives constructive notice to all *subsequent purchasers* and a superior claim is created against "*all parties whose claims or interest arise or are perfected thereafter*." However, here, the *lis pendens* notice was recorded *prior to* the assignment of rents recordation. In other words, VLDD's claim "arose" prior to PNB's entry into a mortgage with KLC.

¶ 61 PNB argues that a *lis pendens* notice does not create a lien and is not perfected until the entry of judgment, which in this case did not come until 2019. We agree in part. "[T]he Illinois *lis pendens* statute does not give the filer a lien, see 735 ILCS 5/2-1901, for filing requires neither the title holder's consent nor judicial intervention. The *lis pendens* just *gives notice to purchasers of the land that there may be **superior interests***." (Emphasis added.) *In re Leonard*, 125 F.3d 543,

20

545 (7th Cir. 1997). Thus, PNB is correct that a lien is not created, but that does not answer our question. As indicated in the next sentence in *In re Leonard*, it acts to give notice "that there may be superior interest." So how can *a lis pendens* result in a "superior interest" if a lien is not created when its recorded. Luckily, the Seventh Circuit in *Leonard* went on to cite and compare *Connecticut v. Doehr*, 501 U.S. 1, 29 (1991) (Rehnquist, C.J., concurring, joined by Blackmun, J.), wherein the United States Supreme Court stated the following:

"A notice of *lis pendens* is a well-established, traditional remedy whereby a plaintiff (usually a judgment creditor) who brings an action to enforce an interest in property to which the defendant has title gives notice of the pendency of such action to third parties; the notice causes the interest which he establishes, *if successful, to relate back to the date of the filing of the lis pendens*."

While this excerpt of law is stated in a concurrence in part by Chief Justice Rehnquist and Justice Blackmun, we believe it is an accurate recitation of this particular area of the law. A *lis pendens* would be essentially worthless and its entire purpose thwarted if the judgment which resulted from the litigation that the *lis pendens* gave notice of could not be executed because subsequent third-party purchasers could obtain a superior right. Thus, though a lien is not immediately created, the *lis pendens* gives notice to any subsequent purchasers that down the road, a court may enter a judgment and that judgment may be superior to your interests because you have notice that the litigation is pending.

¶ 62    We now turn to some additional Illinois case law in examining the issue. "A *lis pendens* notice is intended to alert persons that the property in question is involved in litigation." *Lake County Grading Co. v. Forever Construction Co.*, 2017 IL App (2d) 160359, ¶ 53. " 'The purpose of the doctrine of *lis pendens* is the avoidance of endless litigation of property rights precipitated

by the transfer of interests in the property after litigation has begun. [Citation.] This purpose is achieved by conclusively binding the party receiving the interest to the result of the litigation as though he or she had been a party from the outset.' " *City of Chicago v. Ramirez*, 366 Ill. App. 3d 935, 944 (2006) (quoting *RTS Plumbing Co. v. DeFazio*, 180 Ill. App. 3d 1037, 1041 (1989)). See also *First Midwest v. Pogge*, 293 Ill. App. 3d 359, 363, 365 (1997); *Admiral Builders Corp. v. Robert Hall Village*, 101 Ill. App. 3d 132, 136 (1981). "The doctrine of *lis pendens* is meant to protect *innocent* subsequent purchasers." (Emphasis added.) *Lake County Grading Co.*, 2017 IL App (2d) 160359, ¶ 56. The other purpose of "*lis pendens* notice is *** to protect a plaintiff from third persons who might acquire, during the pendency of litigation, interest in the subject matter of the litigation *such as would preclude the court from granting the plaintiff the requested relief*." (Emphasis added.) *Admiral Builders Corp.*, 101 Ill. App. 3d at 136; *E&E Hauling, Inc. v. County of DuPage*, 77 Ill. App. 3d 1017, 1023 (1979).

¶ 63     We find two Illinois cases to be instructive in our analysis. First, we look to *R.W. Boeker Co. v. Eagle Bank of Madison County*, 170 Ill. App. 3d 693 (1988). The following is a quote from *Lake County Grading Co.*, 2017 IL App (2d) 160359, ¶¶ 59-62, summarizing the holding in *R.W. Boeker*:

> "*R.W. Boeker Co. v. Eagle Bank of Madison County*, 170 Ill. App. 3d 693 (1988),
>
> [was a case] where two mortgage holders filed a complaint against the owner of a
>
> sports facility to foreclose their mortgages. A *lis pendens* notice of the pending
>
> foreclosure proceedings was recorded, and 'unknown owners' of the property were
>
> served. *R.W. Boeker Co.*, 170 Ill. App. 3d at 694.
>
>      During the pendency of the proceedings, the facility's owner persuaded a
>
> contractor to furnish labor and materials necessary to improve the facility, and the

22

contractor worked for seven months. The mortgage foreclosure action went to trial. The contractor recorded its claim for a mechanic's lien, and a judgment of mortgage foreclosure was entered two days later. One of the mortgage holders purchased the property and obtained a judicial deed. *R.W. Boeker Co.*, 170 Ill. App. 3d at 695.

Less than a month later, the contractor filed its complaint against the purchaser to foreclose its mechanic's lien. The contractor claimed to be unaware of the foreclosure proceedings, while the purchaser allegedly knew that the contractor was performing the work. The trial court held that the mechanic's-lien claim was extinguished by the foreclosure sale and the issuance of a judicial deed. The court concluded that the contractor's cause of action was barred by the judgment in the mortgage foreclosure proceedings. The court therefore dismissed the complaint. *R.W. Boeker Co.*, 170 Ill. App. 3d at 696.

On appeal, the appellate court held, *inter alia*, that the *lis pendens* notice gave the contractor constructive notice of the mortgage foreclosure proceedings and that the contractor 'consequently acquired its rights *pendente lite.*' *R.W. Boeker Co.*, 170 Ill. App. 3d at 698. The appellate court concluded that, because the *lis pendens* statute applies unequivocally to all interests in or liens upon property, regardless of their nature, the contractor was bound by the mortgage foreclosure proceedings and had no claim for any kind of a lien on the sports facility property. *R.W. Boeker Co.*, 170 Ill. App. 3d at 698."

Thus, *R.W. Boeker* holds that a *lis pendens* notice puts a subsequent purchaser, like the holder of mechanics lien, on notice of the pending litigation, and although the lien was recorded prior to the judgment being entered, the judgment still held priority which extinguished the mechanics lien.

The *lis pendens* gave the contractor constructive notice of the litigation, and he was bound by it to his detriment.

¶ 64    Finally, we find *Security Savings & Loan Ass'n v. Hofmann*, 181 Ill. App. 3d 419 (1989), to be most factually similar and instructive in this matter. In *Hofmann*, the wife (Sandra) was awarded a judgment in a divorce proceeding wherein the court allowed the judgment to act as a lien on the husband's (Roger) home. *Id*. at 422. Sandra did not file her *lis pendens* notice until after the judgment and after the initiation of an appeal by Roger. *Id*. This was procedurally incorrect; however, the applicable law did not prohibit such filing at any point during the litigation. *Id*. During the pendency of the appeal, on April 4, 1983, Security Savings & Loan Association (Bank) disbursed funds to Roger and his new wife and recorded a mortgage, but the final judgment that established Sandra's lien against the real estate was entered after the Bank's mortgage recording on June 29, 1983. *Id*. at 423. After the final judgment, Sandra then promptly filed the necessary certificate of judgment, making the judgment a legitimate lien on the property. *Id*.

¶ 65    The Bank contended, as PNB does here, "that its lien is prior and superior to the defendants' [(Sandra assigned her judgment lien prior to this lawsuit)] because a certified copy of Sandra and Roger's dissolution judgment was not recorded until July of 1983, so there was no existing lien on the property at the time the mortgage was recorded in April of 1983." *Id*. at 422. The *Hofmann* court acknowledged that "the filing of the *lis pendens* notice *** did not create a proper lien against the subject property." *Id*. However, it continued, "[t]his determination does not resolve the case, however, for we agree with the defendants that the *lis pendens* notice gave the [Bank] constructive notice of the pending litigation and now prevents the [Bank] from claiming to be an innocent purchaser." *Id*.

¶ 66    The *Hofmann* court went on to ultimately hold:

24

"Sandra's lien, which she assigned to the defendants, arose out of the final judgment in the dissolution action of which the [Bank] had constructive notice. The record reveals that had the [Bank] conducted a sufficient title search prior to disbursing funds to Roger and his new wife, it would have discovered the notice of *lis pendens*, and that the court had ordered the judgment in Sandra's favor to be a lien against the subject property. Further inquiry would have revealed that the case remained unresolved following the appeal. Thus, the [Bank] did not acquire its interest as a bona fide purchaser without notice, but rather, it stood in the shoes of the mortgagor and took its interest with notice and subject to the judgment lien which attached after the final judgment was rendered in the litigation. The [Bank]'s interest in the real estate arose subsequent to the formal notice of *lis pendens* and is therefore inferior to the defendants' interest." *Id*. at 423.

¶ 67    We find the present matter to be analogous to that set forth in *Hofmann*. Thus, we find that PNB has an inferior interest to VLDD as to the Jacob Smith rents owed to KLC. "The doctrine of *lis pendens* represents the view that one who acquires an interest in property that is involved in pending litigation stands in the same position as the vendor, is charged with notice of the rights belonging to the vendor's antagonist, and takes the property subject to whatever valid judgment is ultimately entered in the litigation." *Id.* at 422-23. VLDD properly recorded its *lis pendens* notice and PNB cannot claim to be a *bona fide* subsequent purchaser who did not know of the pending lawsuit. VLDD put PNB on notice and, as a result, the judgment which was ultimately entered by the trial court in 2019 relates back and is superior to PNB's interests.

¶ 68    Therefore, we find that the trial court erred in granting turnover of Jacob Smith's outstanding rents owed to KLC to PNB, and instead reverse and hold that it should have granted VLDD's request for turnover of the Jacob Smith rents.

¶ 69                                III. CONCLUSION

¶ 70    For the foregoing reasons, we dismiss the issues raised by VLDD over which we lack jurisdiction as outlined above relating to the February 17, 2022, order, and reverse the trial court's decision as to awarding assignment of rents to PNB instead of VLDD and remand for further proceedings in accordance with this disposition.


¶ 71    Dismissed in part and reversed in part; cause remanded for further proceedings.